### No. 62.—Wm. A. Black, plaintiff in error, *vs.* Robert C. Black, defendant in error.

[1.] A plea to a bill in Chancery, intended as a *pure plea*, which does not bring forward some new matter, displacing the Equity, is bad. When the bill is demurrable on its face, for matter which is set forth in such a plea, the latter should be over-ruled.

[2.] Though a bill be not framed with accurate precision, yet, the allegations will be sufficient, if they clearly and distinctly apprise the defendant of what he is called on to defend.

[3.] The rule, that in a Court of Equity, real estate owned by a partnership, may be treated as a part of the partnership funds, and as personal property, grows out of the nature of the partnership, its exigencies and relations, is intended to remedy the universality of the Common Law, and is not adopted as an arbitrary rule, by which a Court of Equity transmutes real estate into personal, because it is partnership property.

[4.] Payment of the purchase money, in the case of a parol contract, concerning lands, is not, *per se*, such performance, or part performance, as will take the case out of the Statutes of Frauds. But such payment, taken in connection with other acts, as the taking of possession and putting improvements on the land, will constitute such performance. These other acts, however, must unequivocally refer to, and result from the agreement.

[5.] If, because a contract is contrary to the Statute of Frauds, specific performance cannot be decreed—for the same reason, an account cannot be decreed.

In Equity, in Marion Superior Court. Decision on demurrer, by Judge Crawford, February Term, 1854.

The bill filed by Robert C. Black, in this case, alleged, that in 1849, E. G. Cabaniss purchased certain parcels of land, on behalf of himself, Wm. A. Black and Wiley Powers, in equal interests, with a view to lay out a portion thereof in city lots, in the contemplated Oglethorpe City, and to dispose of the same, and the balance of the land, on speculation, for the benefit of the said partners; that in 1849, William A. Black sold to complainant, "for a valuable consideration", the one-third of all his interest in the lands aforesaid, including his interest in the said ferry, and in all the moneys and proceeds arising from the sale of said lands, and from the use of said ferry, and from all the speculations and profits consequent thereupon—he promising to make complainant a written transfer thereto; that he has paid Wm. A. Black a large sum of money therefor—$1,000 or some other large sum—*all that he was called on*, or was bound to pay, by his contract. As evidence of a payment, complainant attached, as an *exhibit*, the following memorandum:

6 | 900—1st payment on Maddox land.

3 | 150
    50—R. C. Black's part, paid by him.

, 6 | 330—Full payment of Ichaconner land.

3 | 55
    18—R. C. Black's part, paid by him.

6 | 120—1st payment on Bacon land.

3 | 20
    6.66—R. C. Black's part, paid by him.

6 | 100—1st payment on Tuber land.

3 | 16.66
    5.55—R. C. Black's part, paid by him.
      (Signed,)        WM. A. BLACK.

The bill alleged, that William A. Black had paid complainant, in pursuance of the said contract, $800, in part of the profits of the partnership. That the profits have been very large—complainant's share being $15,000, or some such sum. That, in consequence of this contract with Wm. A. Black, and relying on his good faith, to execute the same, complainant was induced to change his residence, and remove to the City of Oglethorpe, and erect expensive buildings, at a cost of $8,000, upon one of the lots, then owned by the said partners. That if W. A. Black is allowed to repudiate the said contract, it will operate as a gross and iniquitous fraud upon complainant, and in great loss, in the depreciation of the value of the improvements made by him—which improvements, he alleged, were made at the solicitation of defendant; and with a view, in a great measure, to enhance the value of the said town lots. The prayer of the bill, was for a decree, requiring Wm. A. Black to execute a written conveyance to complainant, for his interest in the lands unsold ; and to account for the profits of those sold, and the rent of the ferry ; and for general relief.

To this bill, a general demurrer was filed, and also a plea of the Statute of Frauds. To the sufficiency of this plea, complainant excepted. This exception, and the general demurrer, were heard together. The Court over-ruled the demurrer, and sustained the exception to the plea.

These decisions are assigned as error.

Judge BENNING having been formerly of counsel in this case, did not preside.

S. JONES and B. HILL, for plaintiff in error.

SMITH and S. HALL, for defendant.

*By the Court.*—STARNES, J., delivering the opinion.

[1.] The defendant, in the Court below, filed his general demurrer, and also, by his plea, relied upon the Statute of Frauds,

as a bar to complainant's right to recovery. The plea was intended as a *pure plea*, and was bad, because it did not bring forward some new matter, displacing the equity of the bill. The matter brought forward, was that which already as distinctly appeared in the bill, viz : that the contract set out, was a contract or sale of lands, or an interest in, or concerning them, and was void by the operation of the Statute of Frauds. The bill, therefore, being on its face, for this reason, demurrable, the plea was properly over-ruled. *Billing vs. Flight*, (1 *Madd*. 230. 1 *Smith Ch. P.* 218.)

The leading distinction between a plea and demurrer is, that the former is used as a defence, where the defect is not apparent on the face of the bill; while the latter is the proper defence, where the defect is apparent on the bill. *Cockburn vs. Thompson*, (16 *Ves.* 325. *Mitford* 297.)

The plea being over-ruled, it remained to be determined whether or not the demurrer should be sustained.

[2.] The first ground of demurrer was, that the complainant had not distinctly and definitely set forth his cause of action; that the bill showed no consent of the other partners to the contract between complainant and defendant; and that his allegation, that he had purchased from defendant one-ninth of his interest in the co-partnership, which is set forth, is contradicted by an exhibit, which shows that his interest was only one eighteenth.

As suggested in the argument, the exact amount of consideration is not specified; but it is averred, that a valuable consideration was paid, and that complainant had paid all thereof, that had been required of him, or that he was bound to pay. In our opinion, the consent of the other partners was not necessary to the validity of the contract, in the light in which we view it, as a contract between Wm. A. Black, in his individual character, and the complainant—the former selling to the latter, an interest in the ultimate profits and avails of that copartnership, and not an interest in the copartnership itself. The complainant insists, that he exhibits the memorandum, which, it is said, contradicts his statement as to the

amount of his interest, not for the purpose of showing the quantity of his interest, but with the design of showing part payment and performance. The exhibit, too, is susceptible of explanation, by proof; and for the matter of that, we are not prepared to say, that the complainant might not recover, according to his proof, a less amount than he claimed in his bill.

On the whole, though the bill is not framed with precision, yet, we think the allegations sufficiently distinct, to apprise the defendant, clearly, of what he is called upon to answer and defend.

[3.] We proceed to consider, whether or not, the contract, in this case, is within the Statute of Frauds.

If this bill were not brought " upon a contract or sale of lands", it was certainly, in the language of the 4th section of the Statute, brought to enforce or have redress upon " an interest in and concerning them", unless, as is insisted by the counsel for the complainants, these lands, *quoad* the purposes of this agreement, are to be considered as personal property.

It is true, that in a Court of Equity, real estate owned by a partnership, may be treated as a part of the partnership funds, and, as a consequence, as personal estate. *Lake vs. Craddock,* (3 *P. Wms.* 158.) *Elliot vs. Brown,* (9 *Ves.* 597.) *Thornton vs. Dixon,* (3 *Bro. Ch. R.* 199. *Collyer on Partner,* 68, 76.) But this rule grows out of the peculiar nature of the partnership relation, and is adopted for the purpose of doing justice between partners, or between them and others having dealings with them, and for the purpose of properly adjusting the relations between them, or between them and others having dealings with, or relations to the partnership. It is not an arbitrary rule, as counsel seem to imagine, by which a Court of Equity transmutes real estate into personal property, when it is once owned and possessed by a partnership, and causes it to take that character outside of, and independent of the exigencies of the partnership, and as to persons having no relation to that partnership.

In this case, whatever may be some of the loose averments of the bill, the complainant, by his counsel, in this argument,

explicitly assumes the position, (which the bill shows, as a whole, to be correct,) that his purchase was of an interest in the profits, to be realized by the defendant, from the sale of these lands by the partnership ; and that he was not and could not have been a partner, or had any relation to the partnership, himself. Wm. A. Black was individually responsible to him, according to the case made, and not as one of the partnership. The complainant, then, was a stranger to this firm, and as to him, these lands were, to all intents and purposes, real estate. Being thus, as to him, real estate, his contract was in relation to an interest in and concerning lands, and was within the Statute of Frauds, and must be held void, unless there has been part performance.

[4.] According to this record, has there been such part performance ? It is agreed, that payment of the purchase money, in such a case, *per se*, is not such part performance as will take a case out of the Statute. But it is insisted, that in addition to this, there has been, in this case, performance, by the removal of the complainant, upon one of the lots—the taking possession of, and improvement of the same.

This question must be determined by the contract itself, as it appears in the bill. As it is there set forth, it does not, with sufficient distinctness, appear that there was any agreement between the parties, that the complainant should remove upon the land in question, or that he should put improvements upon the same, in order to enhance the value thereof, for the purpose of the ultimate sale or speculation in the same. The bill plainly shows, that this purchase was made for purposes of speculation ; and if the complainant desired to rely upon the fact, that he had taken possession of one of these lots, and put improvements upon it, in accordance with an agreement had with the defendant, he should clearly and definitely set this forth. In our opinion, this has not been done.

The case is different, where one purchases real estate, by parol agreement, for the purpose of taking possession of the same, pays the whole, or a considerable portion of the purchase money, and relying upon the good faith of the seller,

to make him title, goes into possession of the land, and puts valuable improvements upon it—all being done in pursuance and in contemplation of the contract. Such are the cases which have been cited. In all these cases, the act of part performance is held as "unequivocally referring to and resulting from the agreement". In such, and only such cases, it is held, that a party who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad, and that he is entitled to treat those acts as if the agreement had never existed. *Morphett vs. Jones*, (1 *Swanst.* 181.) *Earl of Aylesford's Case*, (2 *Strang.* 783.) *Lacon vs. Mertins*, (3 *Atk.* 1.) *Wells vs. Stradling*, (3 *Ves.* 381.) *Lester vs. Foxcroft;* (2 *Vern.* 456. *And see S. C. in* 1 *W. & T. L. C.* 512, *and cases there cited.*)

In this sense it was, that this Court designed to be understood, no doubt, in the case of *Robson, adm'r, vs. Harwell and Wife,* (6 *Ga. R.* 589.)

[5.] For the reason that specific performance cannot be decreed in this case, an account cannot be decreed. If the contract was contrary to the 4th section of the Statute of Frauds, it was void; and, of course, can be, for no purpose, enforced.