Decided 2 July, 1900.

## CHURCH v. ADAMS.

[61 Pac. 639.]

TIMBER CULTURE CLAIM—VALIDITY OF CONTRACT TO SELL.

20 U. S. Stat. 113, § 2, governing timber culture claims, and providing that a person applying for the benefit of the act shall make affidavit that the entry is for the cultivation of timber for his exclusive use, and on final proof shall show that he has planted a certain number of trees, and cultivated and protected them for a certain time, does not inhibit the claimant, who has made entry in good faith, from contracting before final proof to sell his claim.

From Malheur: MORTON D. CLIFFORD, Judge.

Suit by J. M. Church, administrator of the estate of R. M. Steel, deceased, to close a partnership of his intestate with I. H. Adams, and for an accounting. Plaintiff appeals from the decree entered.          MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Chas. H. Finn.*

For respondent there was a brief over the names of *James A. Fee, R. G. Wheeler,* and *Robert J. Slater,* with an oral argument by *Mr. Fee.*

MR. JUSTICE BEAN delivered the opinion.

This is an appeal from part of a decree in a suit brought by plaintiff's intestate to dissolve a partnership and for an accounting. The only question for the consideration of this court is whether two tracts of land, known and referred to in the record as the "Timber Culture Claim" and the "Weaver Place," belong to, and are part of, the partnership assets. On November 17, 1885, the plaintiff's intestate, R. M. Steel, and the defendant, Adams, entered into a partnership, to continue for ten years, under the firm name and style of Steel & Adams, for the purpose of carrying on the business of

farming and stock raising in Baker County. Under the terms of the partnership agreement, Steel was to, and did, advance to the partnership $10,000, to remain invested in the business during its continuance, in consideration of which Adams agreed to furnish the labor and services of himself and family in the prosecution and management of the business. At the time of the formation of the partnership, Adams was the owner of a pre-emption claim consisting of one hundred and sixty acres, and a timber culture filing on another quarter section, one-quarter interest in the Nevada Ditch, and horses, cows, wagons and farming machinery. Immediately after the formation of the partnership, the firm purchased of Adams the property then owned by him for $11,601, paying for it with the $10,000 advanced by Steel and $1,601 loaned by him to the company on its demand note. The partnership continued the business until the expiration of the time limited in the articles of copartnership, at which time, the parties being unable to settle their affairs, this suit was brought by Steel for a dissolution of the partnership and an accounting, pending which Steel died, and Church, having been appointed administrator of his estate, was substituted as plaintiff.

The questions presented are, first, whether Adams' timber culture claim is part of the assets of the partnership. At the time of its formation, there were present and participating in the negotiations, R. M. Steel, his son, George A. Steel, and the defendant, Adams, and upon the testimony of these three persons must the question be determined. R. M. Steel, in referring to the matter, says, in answer to interrogatory No. 16: "Two thousand dollars of the amount furnished by me to the firm of Steel & Adams, on November 18, 1885, which was paid to I. H. Adams immediately after coming into possession of the firm, was invested in land, that

sum being paid for the east half of the northeast quar-
ter, and the east half of the southeast quarter, of section
24 ;'' and in answer to interrogatory No. 17 : ''Two hun-
dred dollars was paid for the improvements on the west
half of the southeast quarter, and the east half of the
southwest quarter, of same section, this sum being for
improvements consisting of fifteen acres of clearing and
five hundred trees, the title to the land being then in the
United States, the defendant having entered same under
the timber culture act.   All subsequent improvements
were to be made at the expense of the firm, including
fees for making final proof, and when patent issued de-
fendant was to deed the land to the firm forthwith, with-
out further consideration.   *   *   *   Defendant had no
means at the time articles of copartnership were entered
into, except such property as he sold the firm, and all
the moneys so received for said property were required
and used to pay his indebtedness.   I do not know of his
having acquired any means in his own right since that
time, as his time has been devoted to the care and man-
agement of the business of the firm without salary, the
necessary wearing apparel for defendant and his family
even having been purchased from firm assets and ad-
vanced to defendant, no part of which advances have
been reimbursed to the firm.   I believe defendant claims
now to own said timber culture in his own right, not-
withstanding the fact that all his rights to same were
purchased by the firm immediately after its organization,
and that it always has been considered to be firm prop-
erty.   The subsequent improvements on the land were
all made by the firm, and cost probably $2,000 or $3,000.

George A. Steel, the confidential clerk and accountant
of his father, took part in the negotiations leading to the
formation of the partnership, and has since been more or
less familiar with its business.   He says, in answer to

interrogatory No. 16: "From the sum of $10,000, invested by the plaintiff in accordance with the articles of copartnership, November 18, 1885, and the sum of $1,601, loaned by the plaintiff to the partnership on that date, which were invested at the same time, the sum of $2,000 was invested in the east half of the northeast quarter and the east half of the southeast quarter of section 24;" and, in answer to interrogatory No. 17, says: "Seventy-five dollars was advanced and paid to defendant for clearing the fifteen acres, and $125 was paid the defendant for trees set out and growing on the west half of the southeast quarter and the west half of the southwest quarter of said section 24, which land belonged at that time to the government, and which the defendant had entered under the timber culture act. It was agreed between the defendant and plaintiff that in consideration of the formation of the partnership and the purchase of property from the defendant, as contemplated thereby, and the payment of the sum of $200 above mentioned, together with the making of all subsequent improvements necessary to enable the defendant to make final proof upon said land, the defendant was to deed the said land to the firm so soon as he received the patent therefor. At the time of the formation of the partnership, and upon facts furnished from statements made to me by the defendant, I made up a schedule of all property owned or controlled by him at that time after he should have repurchased from the Oregon Construction Co. certain freight teams, fully equipped, which he had theretofore sold them, which said schedule, marked 'Exhibit D,' is attached to the deposition of R. M. Steel in this case. The total amount of property, according to the valuation placed thereon by the defendant, amounted to the sum of $12,011. This valuation was afterwards reduced by agreement between plaintiff and defendant by the sum of $410, leaving the

balance of the property, as agreed upon beween plaintiff and defendant, $11,601, which sum was afterwards paid defendant by the firm for such property. * * * I know of no means acquired by the defendant in his own right since the formation of the partnership. The west half of the southeast quarter and the east half of the southwest quarter of said section 24, known as the 'Timber Claim,' has always been held, used, and considered to be property belonging to the firm, and improvements thereon, which have been very extensive, have been made by the firm in such a manner as would not have been pursued with property not belonging to them. The cost of such improvements, considering the clearing, preparing for irrigation, by means of construction of wheels, pumps, windmills, water wheels, flumes, ditches, setting out and growing of fruit trees, and water therefor, would, in my judgment, amount to several thousand dollars. No detailed account of the expenditures in the way of labor on the above-described land was ever reported or kept, nor were the other expenditures charged up to defendant's account, as would have been the case if it had been considered to be his individual property. Upon the books of the firm the total investment in real estate is shown to be $400, the remaining $1,800 of the total $2,200 allowed defendant for the east half of the northeast quarter, the east half of the southeast quarter, the west half of the southeast quarter, and the west half of the southwest quarter of said section 24, being represented by note of the defendant to the firm, dated November 18, 1885, due June 30, 1891, without interest; it being calculated that the defendant would have made final proof by this date upon the timber culture, and he was then to deliver forthwith the deed of said land to the firm, without further consideration than the surrendering of the note in question. A memorandum was made by me at the time of

the agreement between plaintiff and defendant, reading as follows : 'The attached note is to be canceled at maturity by deed to timber claim, all improvements on which are to be done by Steel & Adams, without charge to I. H. Adams, consideration for one hundred and sixty acres to be $1,800.' And this agreement has at all times since remained attached to the note, and said note and agreement attached is appended to the deposition of R. M. Steel in this case, and marked 'Exhibits E and F.' ''

As explaining why Adams' note for $1,800 was taken by the firm, to be delivered and surrendered up when the timber culture claim should be deeded to it, and in explanation of the entry in the books in reference thereto, the witness says, in answer to cross interrogatories 12 and 14 : ''The memorandum of Adams' property, and the value thereof, made as a basis for the formation of the partnership, was used to form the basis of the entries on the books, and these prices are correct as agreed upon, with the exception of the valuation of the real estate and improvements on the timber culture, which are erroneous as they appear on the books and as testified by me in answer to interrogatory No. 17 of the direct examination ; the amount charged to bills receivable for I. H. Adams' note, dated November 18, 1885, $1,800, being in fact chargeable to real estate. The reason of this entry being made in this manner was that the defendant had not made final proof on the timber culture claim, and it was feared that the knowledge of the actual transaction between defendant and the firm of Steel & Adams, if entry was correctly made, might prevent the making of such final proof. * * * The amount agreed upon which I. H. Adams was to receive for the one hundred and sixty acres of land owned by him in November, 1885, and his interest in the timber culture claim and improvements thereon, all subsequent improvements necessary to enable him to

make final proof, and all future expenses in connection therewith, to be made and paid for by the firm, who would then be entitled, upon the issuing of the patent, forthwith to the deed from I. H. Adams of the timber culture, was $2,200 ; but, owing to the fact that I. H. Adams had not made final proof of the timber culture claim, and for the reason stated in answer to interrogatory No. 12, the price paid for the one hundred and sixty acres of land is entered at $400, and no mention is made of the timber culture, while the difference of $1,800 between the amount of $400 mentioned and the valuation of $2,200 agreed upon for the one hundred and sixty acres of land and timber culture was charged to bills receivable, for I. H. Adams' note, dated November 18, 1885, for that amount, which said note was made to fall due in 1891, at a time when it was calculated that Mr. Adams would have made final proof upon the timber culture claim, and which he was then forthwith, and without consideration, except the surrender of the $1,800 note, to deed to the firm of Steel & Adams.'' Upon the schedule of Adams' property which the witness George A. Steel says he made up at the time of the formation of the partnership and its purchase of the property, and which was identified and introduced in evidence, and marked '' Exhibit D,'' appears an item of $75 for clearing fifteen acres of the timber claim, and $125 for trees planted thereon, which tends to corroborate the testimony of both R. M. and George A. Steel as to the terms of the partnership agreement and the property purchased by it from Adams.

The testimony of the Steels in reference to this matter is contradicted by Adams, who testifies that he was to deed the pre-emption claim to the partnership for $2,000, but nothing was said about purchasing the timber claim, or paying for the trees or clearing thereon, although both places were to be improved and worked together ; that

he never kept any account of the cost of the improvement made on the timber culture claim, but thinks it amounted to $3,000 or $4,000; nor did he keep any account of the income therefrom, but it was treated as the property of the firm. The witness seems to rely principally upon his recollection of what occurred at the time of the formation of the partnership, and he is contradicted by R. M. and George A. Steel, whose testimony is corroborated by written memoranda made at the time. It is true the defendant offered in evidence what purports to be a list of his property at the time the partnership was entered into, which he insists is the schedule upon which the purchase was made. It corresponds substantially in all particulars with Exhibit D, except that the items for clearing a portion of the timber claim, and for five hundred trees thereon, amounting in the aggregate to $200, are omitted from defendant's list, and instead thereof is an item of $200 for the potato crop thereon. The testimony of the defendant shows that this list, marked "Exhibit 9," was discovered among his papers after the commencement of this suit, and is in the handwriting of George A. Steel. George A. Steel testifies that in his opinion it was made out, together with other statements, for the convenience of Mr. Adams, some time subsequent to, or perhaps prior to, the formation of the partnership, but that it was not considered when the partnership was formed, nor did it form the basis thereof. The witness says that during the negotiations looking to the formation of the partnership several lists of property owned by Adams, with differing valuations, were made out, but he testifies that the list which formed the basis of the partnership is the one made out by him, introduced in evidence by the plaintiff, and marked "Exhibit D," which contains the items of clearing the tree claim and the five hundred trees; and, when the defendant's

particular attention was called to Exhibit D, and he was asked if he was willing to swear that he did not see it at the time the partnership was formed, he said: "Well, I saw something of this kind, but I would not swear it was this one. This one seems to be made in pencil, and I don't remember whether that was in writing or not, or in pencil. There is no date to this. It was done ten years ago. Q. Are you willing to swear, Mr. Adams, that that wasn't made at your dictation at that time? A. I probably dictated the instrument that was made at that time, but I wouldn't swear to this one. No, sir; there is no signature to it that I could prove anything or that could be identified positively." So that, upon the whole, we are of the opinion that the manifest weight of the testimony is in favor of the plaintiff's contention that it was understood and agreed at the time the partnership was formed that the timber culture claim should belong to and become a part of the assets of the firm, and be conveyed to it as soon as Adams should make final proof, and acquire title from the government.

It is argued, however, that such a contract is void as against public policy. In support of this position, reliance is had upon a line of authorities holding that the courts will not enforce specific performance of a contract made by a homesteader to convey his claim after final proof: *Clark* v. *Bayley*, 5 Or. 343; *Brake* v. *Ballou*, 19 Kan. 397; *Warren* v. *Van Brunt*, 86 U. S. (19 Wall.) 646; *Brewster* v. *Madden*, 15 Kan. 249; *Oaks* v. *Heaton*, 44 Iowa, 116; *Anderson* v. *Carkins*, 135 U. S. 483 (10 Sup. Ct. 905). The homestead law requires the applicant to make an affidavit at the time of his entry that it "is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person" (Rev. Stat. U. S. § 2290); and, on making his final proof, "that no part of such

land has been alienated, except as provided in section 2288" (Rev. Stat. U. S. § 2291), viz., "for church, cemetery, or school purposes, or for the right of way of railroads." Under this provision of the federal statute, it is held that, as a homestead claimant who has sold or contracted to sell his homestead, or a part thereof, cannot make final proof without perjuring himself, a contract to do so is against public policy, and will not be enforced in a court of equity. But we are not directed to any such provision in the law governing timber culture claims, nor to any provision therein against alienation. It provides (20 Stat. 113, § 2) that a person applying for the benefit of the act shall make affidavit at the time of his entry "that this filing and entry is made for the cultivation of timber, and for my own exclusive use and benefit; that I have made the said application in good faith, and not for the purpose of speculation, or directly or indirectly for the use or benefit of any other person or persons whomsoever; that I intend to hold and cultivate the land, and to fully comply with the provisions of this said act." And the only provision in reference to final proof is that "the person making such entry, or, if he or she be dead, his or her heirs or legal representatives, shall prove by two credible witnesses that he or she or they have planted, and, for not less than eight years, have cultivated and protected such quantity and character of trees as aforesaid; that not less than twenty-seven hundred trees were planted on each acre, and that at the time of making such proof that there shall be then growing at least six hundred and seventy-five living and thrifty trees to each acre." We do not understand this provision to inhibit the timber culture claimant who has made his entry in good faith from contracting to sell his claim prior to the final proof, and the law seems to be so interpreted by the land de-

partment of the United States : *Sims* v. *Busse,* 4 Land
Dec. Dep. Int. 369 ; *United States* v. *Read,* 5 Land Dec.
Dep. Int. 313.

So far as the Weaver place is concerned, the evidence
shows that it was deeded to the defendant's wife by
Weaver some time after the formation of the partnership
of Steel & Adams, and there is no testimony, except mere
inferences, on behalf of the plaintiff, that it was purchased
or paid for with the partnership funds.   On the other
hand, the defendant, his wife, and their son all testify
that it was purchased and paid for by Mrs. Adams with
her own money, and this evidence is substantially uncon-
tradicted.   Moreover, Mrs. Adams is not a party to this
suit, and therefore no decree could be made, in any event,
which would be binding upon her.   The decree of the
court below will be modified in accordance with these
views.       .                             MODIFIED.

---

Decided 2 July, 1900.