Argued 24 November ; decided 22 December, 1902.

**ADAMS *v.* CHURCH.**

[70 Pac. 1037.]

PUBLIC LANDS—EXEMPTION FROM PRIOR DEBTS.

1. The provision of 20 Stat. U. S. 113, 114, § 4, that no land acquired under the timber-culture act shall be liable to the satisfaction of any debts contracted prior to the issuing of the final certificate therefor, is a valid condition that congress had power to annex to the grant.

EFFECT OF CONVEYING LAND TO PARTNERSHIP.

2. A conveyance of realty to a partnership passes the title thereof to the individual members of the firm as tenants in common. and each partner holds his share as his own subject to a trust in favor of firm creditors, and of the other partners if a balance is found due them on the final accounting.

LIABILITY OF TREE CULTURE CLAIM TO PARTNERSHIP DEBTS.

3. A timber culture claim belonging to the members of a partnership is not subject to firm debts contracted prior to the issuance of the final certificate.

EFFECT OF PRIOR ADJUDICATION.

4. A decree that certain land obtained by one of a firm under the timber-culture laws of congress, and claimed by him as his own, is really partnership property, is not conclusive as to the liability of such land for partnership debts contracted before the issuance of the final certificate, for the latter question could not properly have been adjudicated in the former case.

From Malheur: MORTON D. CLIFFORD, Judge.

Suit by I. H. Adams against J. M. Church and others for an injunction. There was a decree for defendants, and plaintiff appeals.        REVERSED.

For appellant there was a brief and an oral argument by *Mr. Lionel R. Webster* and *Mr. Will R. King.*

For respondents there was a brief over the names of *John L. Rand, Charles H. Finn,* and *Thomas H. Crawford,* with an oral argument by *Mr. Rand* and *Mr. Crawford.*

MR. JUSTICE BEAN delivered the opinion.

1. This is a suit to enjoin the sale of an undivided one half of 160 acres of land in Malheur County to satisfy the debts of a partnership composed of the plaintiff and one R. M. Steel. Prior to November, 1885, the plaintiff made application to purchase the land in controversy under an act of congress "to encourage the growth of timber on the western prairies," and amendments thereto: 20 Stat. U. S. 113. Shortly afterward he entered into partnership with Steel for the purpose of carrying on the business of farming and stock raising, under the firm name and style of Steel & Adams. By the terms of the partnership agreement, plaintiff's timber culture was to be considered as partnership assets, and was to be conveyed by him to the firm as soon as he obtained title from the United States. Thereafter Steel died, and, the plaintiff refusing to comply with his agreement, it was decreed, in a suit prosecuted by Steel's representatives for the purpose of determining the assets of the firm and for its dissolution, that the land in controversy was partnership property, and belonged to the firm: *Church* v. *Adams,* 37*Or. 355 (61 Pac. 639). The proof of compliance with the provisions of the act of congress under which the land was taken was made by plaintiff and the final certificate issued to him in 1896. The partnership debts which it is now sought to enforce against the land were contracted prior to that time, so that the sole question for decision is whether the plaintiff's interest in the land can be seized and sold under execution for debts contracted by the firm of which he was a member prior to the issuing of the certificate. The case would be clear if Adams still owned the land in his individual right. The act of congress under which it was acquired provides as follows: "Sec. 4. That no land acquired under the

provisions of this act shall, in any event, become liable to the satisfaction of any debt or debts contracted prior to the issuing of the final certificate therefor'': 20 Stat. U. S. 114. This is a valid provision, and a condition annexed to the grant which congress was authorized to make, and absolutely prohibits the seizure and sale of the land, against the will of the owner, for the satisfaction of a debt contracted by the donee prior to the issuing of the final certificate: *Nash* v. *Farmers' Bank,* 3 Kan. App. 694 (44 Pac. 907) ; *Clark* v. *Bayley,* 5 Or. 343; *State* v. *O'Neil,* 7 Or. 141; *Faull* v. *Cooke,* 19 Or. 455 (26 Pac. 662, 20 Am. St. Rep. 836) ; *Wallowa Nat. Bank* v. *Riley,* 29 Or. 289 (45 Pac. 766, 54 Am. St. Rep. 794) ; *Miller* v. *Little,* 47 Cal. 348; *Russell* v. *Lowth,* 21 Minn. 167 (18 Am. Rep. 389) ; *Baldwin* v. *Boyd,* 18 Neb. 444 (25 N. W. 580) ; *Brandhofer* v. *Bain,* 45 Neb. 781 (64 N. W. 213) ; *Van Doren* v. *Miller,* 14 S. D. 264 (85 N. W. 187) ; *Gile* v. *Hallock,* 33 Wis. 523.

2. But it is argued that, when the land became the property of the firm of Steel & Adams by virtue of the decree referred to, the interest of Adams therein was no longer within the provisions of the act of congress, and thereafter became liable for the debts of the firm, whether contracted before or after the issuing of the final certificate; the same as it would for similar debts of a private individual to whom Adams had conveyed the title. The vice of this position, however, becomes manifest when it is remembered that the decree does not affect Adams' title to an undivided one half of the land in any way, except that thereafter he held it in trust for partnership purposes, and subject to the payment of such partnership debts as it might be legally liable for, in preference to his individual liabilities. The title did not pass to the partnership, because a partnership, as such, cannot take or hold the legal title to real estate. It is not a person, either natural or artificial, and when a deed is made to a partnership it passes the title to the individual members thereof as tenants in common: *Kelley* v. *Bourne,* 15 Or. 476 (16 Pac. 40) ; 1 Bates, Partn. § 296; Shumaker, Partn. 202. In England partnership realty is in equity

deemed personalty for all purposes; but, under the American doctrine, it is, even in that forum, regarded as personal property only so far as may be necessary for the payment of the debts and the adjustment of the partnership assets. For such purposes, it is considered as personal property, and governed by the rules and general doctrine applicable to that species of property. But this is not an arbitrary rule, by which real estate, when it is once owned and possessed by a partnership, is transmuted by a court of equity into personal property for all purposes. It still retains all its characteristics as a real estate, and must be owned and conveyed as such. The ground of the doctrine is the special interference of equity in favor of commerce, whereby the trust in favor of the partnership is separated from the legal estate, and made subject to the rules applicable to the personal property of a partnership, so far as it concerns the partners in relation to each other, or those in privity with them. It is only when necessary to protect the equitable rights of creditors and the respective partners, or when otherwise required by the exigencies of the partnership, that it is so considered by a court of equity. The legal title is at all times held by the copartners as tenants in common, and, when no longer needed for partnership purposes, it is released from all trusts growing out of the partnership relation; and, if each partner's legal title corresponds to his interest or share in the partnership, equity will not interfere to convert it into personalty, but it will descend to the heirs of the respective partners, as in the case of any other tenancy in common.

"The clear current of the American decisions supports the rule," says Mr. Chief Justice ANDREWS in *Darrow* v. *Calkins,* 154 N. Y. 503 (49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637), "that in the absence of any agreement, express or implied, between the partners to the contrary, partnership real estate retains its character as realty, with all the incidents of that species of property, between the partners themselves, and also between a surviving partner and the real and personal representatives of a deceased partner, except that each share is impressed with a trust implied by law in favor of the other

42 OR.—18

partner,—that, so far as is necessary, it shall be first applied
to the adjustment of partnership obligations, and the payment
of any balance found to be due from the one partner to the
other on winding up the partnership affairs. To the extent
necessary for these purposes, the character of the property is,
in equity, deemed to be changed into personalty. On the death
of either partner, where the title is vested in both, the share of
the land, standing in the name of the deceased partner de-
scends as real estate to his heirs, subject to the equity of the
surviving partner to have it appropriated to accomplish the
trust to which it was primarily subjected. The working out of
the mutual rights which grew out of the partnership relation
does not seem to require that the character of the property
should be changed until the occasion arises for a conversion,
and then only to the extent required. The American rule com-
mends itself for its simplicity. It makes the legal title subserv-
ient in equity to the original trust. It disturbs it no further than
is necessary for this purpose. The portion of the land not
required for partnership equities retains its character as realty,
and it leaves the laws of inheritance and descent to their ordi-
nary operation." See, also, 1 Bates, Partn. § 279; 1 Lindley,
Partn. (2 Am. ed.) *332, note; Shumaker, Partn. 216; 17 Am.
& Eng. Enc. Law (1 ed.), 952; *Shearer* v. *Shearer,* 98 Mass.
107; *Black* v. *Black,* 15 Ga. 445; *Lang's Heirs* v. *Waring,*
25 Ala. 625 (60 Am. Dec. 533); *Goldthwaite* v. *Janney,* 102
Ala. 431 (48 Am. St. Rep. 56, note, 15 South. 560, 28 L. R. A.
161). It is accordingly held in many jurisdictions that a part-
ner is entitled to claim the benefit of the local exemption or
homestead laws out of partnership property, even as against
partnership creditors, on the theory that the property of the
firm is owned by the individual members: *Skinner* v. *Shannon,*
44 Mich. 86 (6 N. W. 108, 38 Am. Rep. 232); *Stewart* v.
*Brown,* 37 N. Y. 350 (93 Am. Dec. 578); *Evans* v. *Bryan,*
95 N. C. 174 (59 Am. Rep. 233); *Ferguson* v. *Speith,* 13 Mont.
487 (34 Pac. 1020, 40 Am. St. Rep. 459); *Moyer* v. *Drum-
mond,* 32 S. C. 165 (10 S. E. 952, 7 L. R. A. 747, 17 Am. St.
Rep. 850); *Blanchard* v. *Paschal,* 68 Ga. 32 (45 Am. Rep. 474);

*Dennis* v. *Kass,* 11 Wash. 355 (39 Pac. 656, 48 Am. St. Rep. 880).

3. Now, the only effect of the decree requiring Adams to convey the property to the partnership was to change his half thereof from individual to partnership property; but it did not remove any of the conditions annexed to his legal title, nor make it liable for any debts contracted by him, either as an individual or as a member of the firm, prior to the issuing of the final certificate; nor did it place the title, so far as his interest is concerned, beyond the reason of the law prohibiting the sale of the land for debts contracted prior to that time. The same reason that exists for protecting him as an individual, and exempting the land from sale for certain debts, would seem to apply with equal force to him as a member of the firm. The object of the act of congress is to prevent the sale of a timber-culture claim for debts contracted by the applicant prior to the issuing of the final certificate. Neither the creditors of the individual, nor of a partnership to which he may belong, have any rights against such property, and it is no hardship to enforce the exemption as against them. The debts of the partnership are the debts of each of the partners personally, which can be enforced against their individual property, and there is no more reason why the interest of one member of the firm in the partnership property should not come within the provisions of the federal statute than if the sole title belonged to him.

4. It is contended, however, that the judgment or decree in the case of *Church* v. *Adams,* 37 Or. 355 (61 Pac. 639), is a conclusive adjudication of the question sought to be determined on this appeal. It has often been said, and is familiar law, that a judgment or decree of a court of competent jurisdiction is conclusive between the parties, not only as to all matters actually litigated, but also as to such as might have been litigated. But the question as to whether the property decreed to be conveyed by Adams to the firm would be liable for the firm debts, and, if so, in what case and under what circumstances, was not involved in the former suit; nor could it have been

litigated or determined therein. It would have been no defense to that suit for Adams to set up the fact that the land was a timber-culture claim, and not liable for any debts of the firm that had been contracted prior to the issuing of the final certificate therefor. Such an inquiry would have been wholly foreign to the purposes of the suit. Its object was to determine whether the .property belonged to the firm, and that was the only issue that could have been presented or adjudicated. The decree therein is therefore in no sense a bar to this suit. It follows that the decree appealed from must be reversed, and one entered here as prayed for in the complaint. REVERSED.