WILSON, ADMX., APPELLANT, *v.* WILSON ET AL., RE-
SPONDENTS.

(No. 4,847.)

(Submitted September 13, 1922. Decided November 4, 1922.)

[210 Pac. 896.]

*Accounting—Partnership—Real Property—Resulting Trusts*
*—Parol Evidence—Statute of Frauds—Appeal and Error*
*—"Final Judgment"—Pleading and Proof.*

Accounting—Partnership—Appeal—"Final Judgment."
  1.  In an action for a partnership accounting in which defendants, among other things, claimed that plaintiff had purchased certain lands with partnership funds, the judgment, which determined all the material issues involved, a referee being appointed to take an account of the partnership affairs to report the facts, and which left nothing undetermined except the title to a homestead patented to plaintiff also claimed as partnership property, was final in the sense used in section 9731, Revised Codes of 1921, authorizing an appeal from a "final judgment."

Same—Property Acquired With Partnership Funds—Resulting Trust.
  2.  Where one of three partners engaged in the livestock business acquired patent to desert land used in the business and paid for it with partnership funds, the land was impressed with a resulting trust in favor of the three partners.

Same — Real Property — Resulting Trust — Parol Evidence — Statute of Frauds.
  3.  Since a resulting trust in realty arises, not out of a contract but by operation of law, it may be proved by parol evidence, the statute of frauds not applying.

Public Lands—Assignment Before Patent—Validity.
  4.  *Quaere:* Is an agreement by an entryman to assign a desert land entry after issuance of patent invalid under section 4682 of the United States Compiled Statutes?

Appeal and Error—Admission of Incompetent Evidence—Absence of Objection.
  5.  A court cannot be put in error for admitting incompetent evidence where timely objection was not made to its admissibility.

Accounting—Partnership—Cross-complaint—When Unnecessary.
  6.  In an action for a partnership accounting it was not necessary for defendants in their answer, after denying the material allegations of the complaint, to plead affirmatively by way of cross-complaint matters showing what were and what were not partner-

---

2.  For authorities discussing the question of resulting trusts in partnership lands, see notes in 27 L. R. A. 468, and 37 L. R. A. (n. s.) 899.

ship assets in order to entitle them to prove what they were, evidence showing what they were having been admissible under the case as made without the cross-complaint.

*Appeals from District Court, Fallon County, in the Sixteenth Judicial District; B. B. Law, Judge of the Ninth District, Presiding.*

ACTION by Mattie L. Wilson, as administratrix of the estate of S. B. Wilson, deceased, against Clarence R. Wilson and another. From judgment and order denying new trial, plaintiff appeals. Affirmed.

*Mr. George W. Farr* and *Mr. George J. Murphy,* for Appellant, submitted a brief; *Mr. Murphy* argued the cause orally.

The Act of Congress of March 28, 1908 (U. S. Comp. Stats. 1916, sec. 4682), concerning desert lands, provides that: "No assignment of an entry" thereof made "to and for the benefit of any corporation or association shall be authorized or recognized." Whatever understanding there was to convey was as to an association, namely, a copartnership, and therefore was invalid. (*Stockmen's Nat. Bank* v. *Hofeldt,* 54 Mont. 205, 169 Pac. 48.) A full exposition of the law relative to executory agreements for the assignment or sale of land embraced in a desert land entry is given by the supreme court of California in the case of *Eymann* v. *Wright,* 177 Cal. 144, 169 Pac. 1037.

Without regard, then, to the fair or unfair dealing of the defendants, it is manifest that their contract was against the policy of the law (Civ. Code, sec. 1667) and could not be carried out under the law.

The court has held that the land embraced in the homestead entry is not partnership property, and was not held in trust by S. B. Wilson. The law is unquestioned that any agreement to convey a homestead entry or to hold a homestead entry in trust for a copartnership is invalid. While the evidence as to an understanding or an agreement relative to the land embraced in the homestead entry was, if anything, more complete and definite than that relating to the desert land

entry, the court held that the homestead entry was not part-
nership property, under a long line of federal and state cases.
(*Anderson* v. *Carkins,* 135 U. S. 483, 34 L. Ed. 272, 10 Sup.
Ct. Rep. 905 [see, also, Rose's U. S. Notes]; *Horseman* v.
*Horseman,* 43 Or. 83, 72 Pac. 698; *Clark* v. *Bayley,* 5 Or. 343;
*Mellison* v. *Allen,* 30 Kan. 382, 2 Pac. 97; *Dawson* v. *Merrille,*
2 Neb. 119; *Oaks* v. *Heaton,* 44 Iowa, 116; *In re Groome's
Estate,* 94 Cal. 69, 29 Pac. 487; *Moore* v. *Moore,* 130 Cal. 110,
80 Am. St. Rep. 78, 62 Pac. 294; *Turner* v. *Donnelly,* 70 Cal.
597, 12 Pac. 469; *Brown* v. *Kennedy (Union Pacific Ry. Co.*
v. *Kennedy),* 12 Colo. 235, 20 Pac. 696; *Robinson* v. *Jones,*
31 Neb. 20, 47 N. W. 480.)

Whatever verbal understanding or agreement there may
have been is unenforceable as being within the statute of
frauds.

The theory of the statute of frauds is very forcibly set forth
in *Ducie* v. *Ford,* 8 Mont. 233, 19 Pac. 414, and the court's
language in that case very aptly applies to the present statutes
and to the case under consideration, assuming, what we by
no means admit, that there ever was such a verbal agreement
as the defendants claim between themselves and S. B. Wilson.
After giving the objects and purposes of such statute the court
says: "Before parol evidence can be introduced, there must be
shown a part performance; and the acts relied upon for that
purpose must be such as unequivocally prove the contract al-
leged, for if they can otherwise be accounted for they do not
prove a sale."

The acts relied on as part performance in this case are
easily accounted for on the theory that S. B. Wilson permitted
Wilson Brothers to use this land in consideration of the work
and money spent in making improvements. There is not even
an attempt to show here that the defendants have not an ade-
quate remedy at law. If they were entitled to the relief they
seek on any other grounds their case collapses by reason of this
failure alone.

A careful search has failed to reveal to counsel any case in
which it is so clearly set forth what is necessary in the way of

proof, both of the contract itself and the part performance necessary, to take a verbal contract for the sale of land out of the statute of frauds as the above cited case of *Ducie* v. *Ford.* This case is repeatedly cited in later cases by the courts of other states as well as our own supreme court. (*Burlingame* v. *Rowland,* 77 Cal. 315, 1 L. R. A. 829, 19 Pac. 526; *Wallace* v. *Scoggins,* 17 Or. 476; 18 Or. 502, 17 Am. St. Rep. 749, 21 Pac. 558; *Ide* v. *Leiser,* 10 Mont. 15, 24 Am. St. Rep. 17, 24 Pac. 695; *Boulder Valley Ditch Mining & Milling Co.* v. *Farnham,* 12 Mont. 1, 29 Pac. 277; *Perkins* v. *Allnut,* 47 Mont. 13, 130 Pac. 1; see also, *Lewis* v. *Patton,* 42 Mont. 528, 113 Pac. 745.)

Was the land held in trust? There can be no express trust here, we submit. It is not claimed that there is any written instrument creating a trust or that any trust was created by the instrument under which S. B. Wilson claimed title. It is impossible that any resulting or implied trust can be inferred here. The law as to such a trust is very clearly settled in *Ryan* v. *Dunphy,* 4 Mont. 342, 1 Pac. 710; *Fulton* v. *Jansen,* 99 Cal. 587, 34 Pac. 331; Pom. Eq. Jur., sec. 1037; *Kimball* v. *Tripp,* 136 Cal. 631, 643, 69 Pac. 428.

*Messrs. Booth & McLemore* and *Messrs. Loud & Leavitt,* for Respondent, submitted a brief; *Mr. Charles H. Loud* argued the cause orally.

The land acquired by a partner for partnership purposes with partnership funds is impressed with a trust in favor of the partnership. (*Marsh* v. *Davis,* 33 Kan. 326, 6 Pac. 612; *Case* v. *Seger,* 4 Wash. 492, 30 Pac. 646; *Hirbour* v. *Reeding,* 3 Mont. 15; 39 Cyc. 152; 30 Cyc. 427.)

The statute of frauds is not applicable to a resulting trust. (*Lynch* v. *Herrig,* 32 Mont. 267, 80 Pac. 240; *Marsh* v. *Davis, supra.*)

The federal statute (U. S. Comp. Stats. 1916, sec. 4682) has no application to the case at bar for the reason that an assignment of a desert entry, either executed or executory, is not

herein involved.  The appellants in their brief proceed upon the theory that S. B. Wilson, at the time he made entry upon the desert claim in controversy, entered into an oral agreement or understanding with Cliff and Clarence Wilson that at such time as he, S. B. Wilson, acquired title to the desert claim, he would convey the desert claim to Wilson Brothers, and that such an agreement is in violation of the federal statute referred to above and therefore unenforceable.  The defendants, as has been stated before, do not rely upon the enforcement of any agreement or contract, either executed or executory, but rather depend for their remedy upon the enforcement of a resulting trust.  (*Lynch* v. *Herrig, supra; Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac. 1127.)

An executory agreement to assign a desert claim may be a valid enforceable agreement.  (*Murray* v. *White,* 42 Mont. 423, Ann. Cas. 1912A, 1297, 113 Pac. 754.)

HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of MR. JUSTICE FARR, disqualified, delivered the opinion of the court.

This is a suit instituted by the plaintiff, as administratrix of the estate of S. B. Wilson, deceased, against the defendants, to obtain a partnership accounting and other relief.  It is alleged in the amended complaint that S. B. Wilson died intestate in Ismay, Montana, on the fourteenth day of July, 1915; that letters of administration of his estate were duly issued to the plaintiff, his widow, in the district court of the sixteenth judicial district of the state of Montana in and for the county of Fallon, on the twenty-seventh day of September, 1915; that for several years, and until the said July 14, 1915, a partnership existed between the deceased and the defendants under the name of Wilson Bros.; that the partnership was formed for the purpose of carrying on the business of farming, of raising, buying and selling livestock, and of operating one or more threshing-machines; that the defendants, as surviving partners, are in possession of the partnership books and assets; that up to the time of the death of S. B.

Wilson there had not been any accounting between the partners with reference to the partnership business; that on the said July 14, 1915, the partnership assets consisted of a large number of horses and other livestock, hay, grain and other personal property of the aggregate value of $12,000; that the plaintiff has demanded of the defendants that they settle the affairs of the partnership, account with her concerning the same, and turn over to her that part of the assets properly belonging to the estate, but that they have failed and refused so to do, and that the defendants are applying the assets and profits of the partnership to their individual uses, and are converting into money a large part of the partnership property without keeping any accurate account thereof.

The answer admits the allegations relating to the death of S. B. Wilson, the appointment of the plaintiff as administratrix of his estate, the existence, duration and purposes of the partnership, the ownership of certain personal property by the partnership, and the absence of an accounting between the partners in the lifetime of S. B. Wilson, and denies all the others. The defendants in what is termed a separate defense and cross-complaint allege, among other things, that about the year 1908 S. B. Wilson made proof upon a certain homestead described as the southeast quarter of section 29, township 8 north, range 55 east, and subsequently received a patent therefor; that about the year 1911 he made proof upon certain desert land described as the north half of the southwest quarter and the south half of the northwest quarter of section 28, township 8 north, range 55 east, and afterwards received a patent therefor; that after proof upon the homestead on the one hand and upon the desert land on the other it was agreed between the plaintiff's intestate and the defendants that, in consideration of their continuing to serve the partnership, and to conduct the particular ranch and improvements thereon, as the case may be, each of the partners should have an undivided one-third interest therein; that the defendants did the things required of them, and that during the lifetime of S. B. Wilson, and subsequent to the issuance of patent, he

held each tract in trust for the partnership; that in or about the year 1908 the partnership purchased under contract from the Northern Pacific Railway Company certain land described as the west half and the northeast quarter of section 29, township 8 north, range 55 east; that said land was to be paid for in ten annual installments, and out of the funds of the partnership, and with the understanding that it should be partnership property; that the installments as they became due were paid out of the moneys of the partnership; that the contract of purchase was entered into between the said company and S. B. Wilson, and that he held the same in trust for the partnership.

The reply admits that S. B. Wilson made proof upon the homestead about 1908 and upon the desert land in 1911, and purchased the third tract above described from the Northern Pacific Railway Company in 1908 in his own name, and denies the other averments.

The court made findings of fact and conclusions of law, and entered in accordance therewith what is designated as an "interlocutory order and decree." In this judgment it is decreed, among other things, that S. B. Wilson held in his own name in trust for the partnership the desert land and the land purchased from the railway company; that the interests of the partners in the partnership property were equal; and that one S. D. McKinnon be appointed referee to take an account of all the business transactions of the partners as such and report the facts. The court found that S. B. Wilson located the homestead in or about the year 1902, and made final proof so as to entitle him to patent therefor in or about the year 1908, but made no disposition of it in the decree. From the judgment and an order denying her motion for a new trial, the plaintiff has appealed.

Counsel for the respondents have urged in their brief and [1] in the oral argument as well that the appeal should be dismissed for want of jurisdiction in this court. They contend the judgment is not final, and therefore, under the provisions of section 9731, Revised Codes of 1921, not appealable.

[64 Mont. 533.]

They contend further that, as the judgment is not final, the motion for a new trial was premature, and hence the order denying the same is not appealable. It is not always easy to determine what is a final judgment for the purpose of an appeal, and indeed the courts are in irreconcilable conflict as to whether a decree of the kind rendered here is final or interlocutory. It is apparent from the record that all the material issues have been determined, except those involving the condition of the account between the partners and the title to the homestead. So far as the trial court is concerned, it has finally and forever adjudicated as between the parties themselves that S. B. Wilson held in his own name in trust for the partnership the Northern Pacific land and the desert land, and that the interests of the partners in the partnership property were equal. Following the case of *Arnold* v. *Sinclair,* 11 Mont. 556, 28 Am. St. Rep. 489, 29 Pac. 340, and in line with what we believe to be the weight of authority, we hold that the appeals are properly before us. (*Sharon* v. *Sharon,* 67 Cal. 185, 7 Pac. 456, 635, 8 Pac. 709; *Stahl* v. *Stahl,* 220 Ill. 188, 77 N. E. 67; *Ketchum Coal Co.* v. *Pleasant Valley Coal Co.,* 50 Utah, 395, 168 Pac. 86; 1 C. J. 647, 648; 3 C. J. 448, 449; 2 R. C. L. 40–42; 5 Ann. Cas. 176, note.)

In the brief of appellant it is conceded that the railroad land was partnership property, and should be considered as such in the final accounting between herself and the respondents. "No error," the brief goes on to say, "is predicated upon the holding of the court in regard to the railroad land, except in so far as we shall contend that the defendants' so-called cross-complaint is improper, and that the court was without jurisdiction to enter any judgment to the effect that S. B. Wilson was the trustee of the defendants in holding title to this land, except as a copartner." With this admission before us we shall not hereinafter attempt to summarize the facts in connection with the purchase of said land.

Regarding the desert land appellant contends: "First, that [2] any agreement or understanding had between the copartners to convey to the defendants or to the copartnership,

[64 Mont. 533.]

or to treat as copartnership property the land embraced in the desert land entry, is invalid and unenforceable; and, second, that, even though such an agreement was valid and enforceable under the law, the evidence is not sufficient to warrant the finding that there was ever any such agreement or understanding.''

The evidence shows that S. B. (also called Sam) Wilson, Clarence R. Wilson and Cliff Wilson were brothers, and came to Bozeman, Montana, from Missouri in 1898. In 1899 they moved to Fallon, Montana, where they worked on the Northern Pacific Railroad for some months. At that time Sam was about twenty-one, Clarence about seventeen, and Cliff about sixteen years of age. Shortly after their arrival in Fallon they agreed among themselves to become partners under the name of Wilson Bros. for the purpose of investing their savings in cattle, and engaging actively, as their resources permitted, in the business of buying, selling, and raising livestock. It was further agreed that they should be equally interested in the partnership property and profits. Sam, presumably because of being the eldest and most experienced, was selected as treasurer and manager of the firm. In the spring of 1899, seventeen and in the fall of the same year twenty-four cattle were bought with partnership funds. The three continued to work for wages until 1902, and in the meantime did not themselves attend to the grazing, housing and feeding of the cattle, leaving that to others who were more favorably situated. During this period Sam received for the partnership all the earnings of Clarence and Cliff, except what they used for bare necessaries. Appreciating the advantage of possessing land for the business in which they were engaged, Sam, in August, 1902, entered the homestead already referred to and described. Cliff followed him thereon in October, and from then on until the death of Sam gave almost his entire attention to the affairs of the partnership. Clarence did not go on the homestead at that time, as there was not· enough work for all of them, but continued in the service of others mostly until 1910, giving to Sam for the use of the firm such portions of his

wages as he himself did not actually require. The cattle were
moved to the place late in 1902, and from that time on to
1908 it was used by the partners as a base for their operations.
Sam and Cliff worked the land, made improvements on it,
and looked after the livestock. From time to time addi-
tional purchases of cattle were made for the partnership. In
those days Sam did all the buying and selling and handled
all the money. In 1900 he began depositing the funds of
the partnership in a bank in Ismay in the name of Wilson
Bros., but did not open an account of his own therein until
1913. Needing more land for farming, grazing, and other
purposes, Sam in 1907 or 1908 filed on the desert land above
described, and thereafter it was used in furtherance of the
partnership business. He secured a patent for it in or about
1911. The price which Sam paid the government for the land
came from the funds of the partnership, and the necessary
improvements thereon, such as reservoirs, canals, ditches, etc.,
were made by Sam, Clarence and Cliff, or by hired help com-
pensated out of the moneys of the partnership. In 1910 the
partners decided to give up the livestock business and go into
farming on a somewhat extensive scale. Accordingly, in the
fall of that year, the cattle, numbering in all about 220, were
sold, and the proceeds used in paying the partnership debts
and buying farm machinery and implements. This arrange-
ment continued without change down to July 14, 1915, when
Sam died.

We agree with the contention of appellant that the evidence
does not establish an agreement or understanding between the
partners to the effect that S. B. Wilson would transfer an
interest in the desert land to Clarence Wilson and Cliff Wilson
or the partnership. But it is not correct to say that the trial
court found there was such an agreement or understanding
or one like it. The court found "that all the labor upon said
desert land entry and money expended thereon in meeting the
requirements of said desert land entry act was performed
and expended by and on behalf of said copartners, and on the
implied understanding that said entry should inure to the

benefit of, and become the property of, said copartners when
title thereto should be granted by the United States of
America," and concluded, as a matter of law, from this find-
ing and other findings of fact made, that "S. B. Wilson held
in his own name in trust for said copartners" the said desert
land. It is evident from the context that by "copartners" the
court meant all of the partners.

Is the conclusion of law sound? Does the evidence estab-
lish a resulting trust in the land in favor of the partnership?
The answer must be in the affirmative. Partners occupy a
fiduciary relation toward one another, and the rule of law is
well settled that, where one partner having possession and
control of the partnership funds uses the same to purchase
land in his own name, the land so purchased inures to the
benefit of all the partners, and each of his copartners may de-
mand an interest in the property acquired corresponding in
extent to his interest in the funds in the first instance. In
other words, under such circumstances, a ·resulting trust in
the property springs up in favor of the partnership, and the
grantee holds it as a mere trustee for the partnership. (Sec.
6785, Rev. Codes 1921; *Lynch* v. *Herrig,* 32 Mont. 267, 80
Pac. 240; *Eisenberg* v. *Goldsmith,* 42 Mont. 563, 113 Pac.
1127; *Marcellus* v. *Wright,* 51 Mont. 559, 154 Pac. 714; *Deaner*
v. *O'Hara,* 36· Colo. 476, 85 Pac. 1123; *School District etc.*
v. *Peterson,* 74 Minn. 122, 73 Am. St. Rep. 337, 76 N. W.
1126; 3 Pomeroy's Equity Jurisprudence, sec. 1049; 1 Perry
on Trusts, 190, 193; 26 R. C. L. 1227; 39 Cyc. 104, 152.)
The fact that the land at the time of the purchase was a part
of the public domain does not affect the rule. So soon as the
patent issues therefor a trust results. (39 Cyc. 117; 32 Cyc.
1061.) Since a resulting trust in realty arises through opera-
[3] tion of law and not out of a contract it may be proved
by parol evidence. The statute of frauds does not, there-
fore, apply. (Sec. 6784, Rev. Codes 1921; *Lynch* v. *Herrig,* 32
Mont. 267, 80 Pac. 240; *McCaleb* v. *McKinley,* 80 Okl. 38,
194 Pac. 105; 3 Pomeroy's Equity Jurisprudence, 2357; 1

Perry on Trusts, 214, 215; 39 Cyc. 108, 109; 26 R. C. L. 1230, 1231.)

In view of some of the things we have so far said, it is [4] hardly necessary to notice section 4682, United States Compiled Statutes, upon the provisions of which counsel for appellant so strongly rely for a reversal. It is not claimed, and indeed the evidence entirely fails to show, that an assignment of the desert land entry was made by S. B. Wilson to the partnership. Neither, as we have already pointed out, does it show an executory agreement on his part to convey to the partnership the desert land or any interest therein after the issuance of patent to him. We express no opinion as to whether or not such an agreement, if made, would be invalid as violative of said section, as the question is not properly before us. The case of *Eymann* v. *Wright,* 177 Cal. 144, 169 Pac. 1037, cited by appellant, holds that an agreement of that sort is invalid. Cases which take the other position are *Adams* v. *Church,* 193 U. S. 510, 48 L. Ed. 769, 24 Sup. Ct. Rep. 512 [see, also, Rose's U. S. Notes] , *Coburn* v. *Bartholomew,* 50 Utah, 566, 167 Pac. 1156 , *Freeland* v. *Dolen* (Okl. Sup.), 203 Pac. 182 , *Botwin* v. *Wise,* 46 Cal. App. 465, 189 Pac. 312 , *Church* v. *Adams,* 37 Or. 355, 61 Pac. 639 , and *Arnold* v. *Christy,* 4 Ariz. 19, 33 Pac. 619.

Appellant argues that in admitting and considering evidence of admissions made by S. B. Wilson, and in permitting one W. B. Leavitt, an attorney, to testify to a conversation with him, the court disregarded section 10535 and section 10536, Revised Codes of 1921, respectively. The point is without merit, and we dispose of it simply by saying that the [5] rule is elementary that a court cannot be put in error where timely objection is not made either to the competency of the evidence or of the witness, as was the case here.

Finally, appellant asserts that the cross-complaint is im- [6] proper, and insufficient and does not support the judgment in so far as it favors the defendants. Assuming for the sake of argument that it is neither proper nor sufficient, it does not follow that the judgment cannot stand. The evidence

offered and received in the defendants' behalf could, in our opinion, be offered and received with equal propriety if the cross-complaint had not been made a part of the answer at all. Putting it in another way, it was not necessary for the defendants to plead affirmative matter in their answer in order to entitle them to show what property the partnership really owned at the time of the decease of S. B. Wilson. In actions such as this it is the duty of the court to determine from all the evidence what are and what are not partnership assets, and give judgment accordingly. (*Dennis* v. *Gordon,* 163 Cal. 427, 125 Pac. 1063; *Church* v. *Adams,* 37 Or. 355, 61 Pac. 639; 30 Cyc. 684, 685, 746; 20 R. C. L. 1019, 1020.)

A careful consideration of every phase of the case impels us to the conclusion that the findings and decree of the lower court are correct, and are amply sustained by the record.

The judgment and order appealed from are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.