## CLAGETT *vs.* KILBOURNE.

1. A joint stock company formed for the purpose of buying and selling lands is a partnership.

2. The separate creditor of a member of an association dealing in lands has the same rights, and no others, against his debtor's share in the lands of the association, that the separate creditors have against the partnership goods of an ordinary mercantile firm.

3. The creditor may levy his execution on his debtor's share of the joint property, but he sells only the debtor's interest in it, after payment of all the partnership debts.

4. The purchaser under the execution takes the estate which the judgment debtor would have been entitled to after a final settlement of the partnership accounts.

5. The purchaser of one partner's share or interest in the lands of an association cannot maintain ejectment for it; his remedy is in equity, where he may call for an account, and thus entitle himself to all that the judgment debtor could have claimed after payment of the partnership liabilities.

Writ of error to the District Court of the United States for the district of Iowa.

The case is fully stated in the opinion of the court.

*Mr. Dixon,* of Iowa, for plaintiff in error.

*Mr. Mason,* of Iowa, and *Mr. Gillet,* of Washington city, for defendants in error.

Mr. Justice NELSON. This suit is an ejectment by Clagett to recover from the defendant an undivided one-sixth of certain parcels of land situate in the county of Lee, and State of Iowa. The plaintiff claims under a sheriff's deed of the property on a sale under a judgment and execution against one Isaac Galland. The principal question in the case turns upon the effect of this sale and conveyance to pass the title to the purchaser.

An association or joint-stock company was formed in 1836 by several persons, in which Isaac Galland, the judgment

debtor, was a member, for the purpose of dealing in the pur-
chase and sale of lands in the State of Iowa, then the Territory
of Wisconsin, lying between the Mississippi and Des Moines
rivers, known as the Half-breed tract.

By the articles of association,- the lands purchased were to
be conveyed to certain trustees named, to hold as joint tenants
in trust, for the benefit of the persons composing the associa-
tion.    The stock or capital was divided into forty-eight shares,
and held in unequal parts by the stockholders representing
the moneys paid into the association.    Isaac Galland was the
owner of 8-48 or one-sixth of the whole.

The articles stipulated that the trustees should purchase the
lands situate as above stated, cause them to be surveyed, lay
out sites for towns, villages, and cities, as they might deem
eligible, and cause the property to be examined in respect to
water power and hydraulic privileges, and lay out the same
with reference thereto.    The trustees were also authorized to
sell and convey any part of the lands purchased, and take
such securities for the purchase money as they might deem fit,
make contracts, and do all lawful acts necessary and proper to
carry into effect the objects of the association.

It is then stipulated that the purchase money, and the costs
of the improvements, taxes, assessments, &c., were to be charged
on the property, and paid out of the first proceeds of the sales;
and that the proceeds, after paying all expenses, charges, im-
provements, disbursements, &c., should be applied to the re-
payment of the purchase money until the whole amount be
paid.

They were to keep regular books of account, in which all
the purchases, sales, and proceedings, in respect to the pro-
perty, should be kept, and semi-annual accounts were to be
rendered to the associates; and that, when the trustees should
have realized money enough from the sales, and other dispo-
sition of the property, to satisfy all the purchase money, im-
provements, interest, taxes, assessments, &c., their power to
sell said property should cease, and a division of the lands and
moneys belonging to the association, if any, made among the
stockholders.

The lands were to be divided into two classes : the first to include sites of towns, villages, and cities, and hydraulic privileges; the second should embrace the residue of the property, and each class to be divided into forty-eight shares, the original number of shares of the association.

It appears from the bill of exceptions that, in 1841, partition was made of the half-breed tract among the proprietors, and that the trustees of this association drew shares in the tract, among others, numbered 43, 56, 84, and 93.

The judgment against Isaac Galland was recovered in 1843, and the sale took place in 1851. The sheriff's deed is dated in 1852. The lots of which 8-48 parts or one-sixth were sold, and to recover the possession of which this suit is brought, were included in the shares above mentioned, and represent the interest of Galland, as claimed, in the several lots. It was admitted that the defendant was in possession of these lots, and that he claimed titles under deeds from the trustees of the association.

The evidence being closed, the counsel for the defendant took objection to the admissibility of the judgment and sale, on the ground that Marsh, Lee, and Delevan, the trustees, were the sole owners of the land under the partition and decree; and that Isaac Galland had no legal title to the same, upon which the judgment could operate as a lien, or be sold on execution, and the court excluded the judgment, execution, and sale.

The joint-stock company, of which the judgment debtor in this case was a member, constituted a partnership for the purpose of dealing in real estate; and the law governing the rights of creditors, representing the separate debts of a partner, must determine the rights of the plaintiff. The judgment was for the individual debt of Galland; and is sought to be enforced against the partnership funds.

The proceedings for this purpose assume that the share of the judgment debtor in the association is an interest in the lands; and though legal title be in the trustees, is liable to be seized on the execution and sold, and the purchaser put in possession.

*Clagett* vs. *Kilbourne.*

The settled law is otherwise. We do not deny but that the execution may be levied on the joint property, with the view of reaching the undivided interest of the judgment debtors; but in such case the levy is not upon his individual share, as if there were no debts of the partnership, or lien on the same, for the balance due to the other partners. It is upon the interest only of the judgment debtor, if any, in the property, after the payment of all the partnership debts, and other charges thereon. The purchaser takes the same interest in the property which the judgment debtor would have upon a final adjustment of all the accounts of the partnership. It is not only an undivided, but an unascertained interest, and the purchaser is substituted to the rights and interests of the judgment debtor in the property sold. Neither does the sale transfer any part of the joint property to the purchaser, so as to entitle him to take it from the other partners; for that would be to place him in a better situation than the partner (judgment debtor) himself.

The remedy of the purchaser is, to go into equity and call for an account, and thus entitle himself to the interest of the judgment debtor, if any, after the settlement of the partnership liabilities.

The fact that the property in this case consists of real estate, does not change the principles of law governing the ultimate rights and interests concerned. The real property belonging to the partnership is treated in equity as part of the partnership fund, and is disposed of and distributed the same as the personal assets.

In this case the legal title is in the trustees, who are bound to account to the stockholders the *cestuis que trusts,* according to their respective shares, after all debts of the association have been discharged. The equity of the judgment creditor is the interest in the land, after a sufficient portion of it has been disposed of for this purpose.

It is quite clear the plaintiff has mistaken his remedy, as he obtained no title, legal or equitable, to the particular lots in question.

It is proper to add, even if an equitable title had been ac-

quired, it would not have helped him, as it will not sustain an ejectment in the Federal courts.   (23 How., 235, 249; 21 ib., 481.)

There are other questions discussed by the learned counsel for the respective parties; but as the examination of them is not material to the decision of the case, we forbear noticing them.

*Judgment affirmed.*