SCHLICHTER JUTE CORDAGE CO. v. MULQUEEN et al.

(Circuit Court, E. D. Pennsylvania. January 12, 1906.)

No. 46.

1. PARTNERSHIP—REAL ESTATE OF FIRM—NATURE OF PROPERTY IN EQUITY.

Partnership real estate is regarded in equity as personal property and assets of the firm, not only for the payment of debts, but also for every other purpose properly connected with the settlement of the partnership affairs.

2. SAME.

After the death of a partner his interest in the partnership and its property, which included real estate standing in the name of the partners, was purchased by the surviving partner who paid full value therefor to the executors and the same was distributed as a part of the estate. Defendants, who were residuary legatees of the decedent, were minors at the time and did not join in the conveyance made by other legatees to the purchaser, but after attaining their majority they joined in approving the executor's final settlement. *Held*, that while they were the owners of the legal title to an undivided portion of the real estate, the equitable title was in the purchaser, and they would be enjoined from enforcing a judgment in ejectment obtained by them for such interest in an action at law.

In Equity.

Kinley J. Tener and H. Gordon McCouch, for plaintiff.
Werner & Fox, for defendants.

J. B. McPHERSON, District Judge. The defendants' counsel having admitted that the statement of facts contained in the brief of counsel for the plaintiff is "absolutely correct," I adopt this statement as the finding of the court. It is as follows:

"(1) Mary C. Mulqueen and Thomas F. Mulqueen, the defendants named in this proceeding, on October 11, 1900, caused a writ of ejectment to be issued out of the Circuit Court of the United States for the Eastern District of Pennsylvania, as of October sessions, 1900, No. 18, against the Schlichter Jute Cordage Company, the complainants in this proceeding, claiming to recover an undivided one-twenty-first part of certain premises described in the bill which hereafter will be referred to as the Aramingo Mill.

"To this writ of ejectment a plea of 'not guilty' was filed, and thereafter, on April 11, 1901, the action was tried in said court, and the defendant in said ejectment did offer certain evidence tending to show as against the plaintiff an equitable defense, which evidence having been offered was admitted subject to a reservation by the court, and thereafter upon said reservation judgment was entered in the ejectment in favor of the plaintiff, as entitled to recover upon their legal title.

"(2) The title to the Aramingo Mill was vested in Moro Phillips prior to February 3, 1871. On that date Moro Phillips by deed (record, page 2) recorded in Deed Book J. A. H., No. 120, page 346, etc., did convey said Aramingo Mill to Thomas Finley, Isaac Schlichter, and Philip Thorne, trading as Finley & Schlichter. The consideration named in the deed was $15,000, and the receipt annexed to the deed in words following (record, page 5):

" 'Received, the day of the date of the above indenture, of the above named Thomas Finley, Isaac Schlichter and Philip Thorne, trading as Finley & Schlichter, the sum of fifteen thousand dollars, being in full the consideration money above mentioned.

" '[Signed]                                Moro Phillips.'

"In fact no part of the purchase money was paid to Moro Phillips at the time of the conveyance in cash (record, page 56), but the purchase price of $15,000 was paid in a bond given to Moro Phillips by Thomas Finley, Isaac Schlichter, and Philip Thorne, of the city of Philadelphia, rope and twine manufacturers, trading as Finley & Schlichter, dated February 3, 1871. payable in ten years from date, with interest (record, page 22), which bond was secured by a purchase money mortgage of even date given by Thomas Finley, Isaac Schlichter, and Philip Thorne, of the city of Philadelphia, rope and twine manufacturers, trading as Finley & Schlichter, recorded in Mortgage Book J. A. H., No. 98, page 214 (record, page 24).

"(3) The books of the firm kept from 1872 to 1879, inclusive, were offered in evidence, and the Aramingo Mill appeared entered in the stock account of the firm as a firm asset continuously from the date of its purchase until the death of Thomas Finley, hereinafter mentioned. The record of the entries is as follows:

| | | |
|---|---|---|
| Feb. 19, 1872. | (Record, page 60) Real Estate, A. Mill, boiler, engine, etc. | $43,081 43 |
| | (Record, page 62) A. Mill Real Estate including boiler and engine. | 43,081 43 |
| March 1, 1875. | (Record, page 64) A. Mill Real Estate including engine and boiler. | 43,081 43 |
| March 1, 1876. | (Record, page 66) A. Mill Real Estate including engine and boiler. | 43,081 43 |
| March, 1877. | (Record, page 68) A. Mill Real Estate. | 43,081 43 |
| March, 1878. | (Record, page 71) A. Mill Real Estate. | 43,081 43 |
| March, 1879. | (Record, page 73) A. Mill Real Estate. | 43,081 43 |
| March, 1880. | (Record, page 75) A. Mill Real Estate $43,081 43 Less 10% depreciation 4,308 14 $38,773 29 | 38,773 29 |
| July 1, 1880. | (Record, page 87) Aramingo Mill. | 38,773 29 |

"The words 'A. Mill real estate' meant Aramingo Mill, to distinguish it from other real estate belonging to the firm. (Record, page 47, et seq.)

"Mr. Schlichter testified (record, page 57) that the amount at which this Aramingo Mill was entered upon the stock account represented its actual cost to the firm, there having been expended on it a large amount for repairs, placing of boiler, engine, etc.

"The liability on the purchase money mortgage also appears on the ledger of the firm as a firm liability for $15,000. This appears continuously through the years intervening between the purchase of the mill and the death of Finley.

"(4) Thomas Finley died October 24, 1879, leaving a will on which letters testamentary were granted to his widow, Elizabeth Finley and his son, Thomas Finley, as the executors thereof. (Record, page 42.)

"He left him surviving six children, to wit, Elizabeth Van Dyke, wife of Charles C. Van Dyke, Catherine Barron, wife of William H. Barron, Isabella F. Moffett, wife of William Moffett, Thomas Finley, Charles W. Finley, and William E. Finley, and two grandchildren, the defendants to this bill, who were the children of Mary Mulqueen, a deceased daughter of the testator. At the time of the death of Thomas Finley these two grandchildren, and also testator's sons, Charles W. Finley and William E. Finley, were minors.

"(5) In his will Thomas Finley provided as follows:

"'Third. It is my wish and desire that my business shall be continued by my executors as long as they shall deem it proper for the best interest of my estate, but if the said business should not be profitable or pay then I desire my said executors to close out my interest therein and collect the same if advisable.'

"The testator further bequeathed to his wife a life interest in all his estate, provided she remained his widow, and directed that after her decease or in the event of her marriage again then:

"'I give, devise, and bequeath the same unto all my children then living and the same to be divided between them share and share alike, and should any of my children die leaving issue said issue is to receive the share their parent would have received if living.'

"(6) The executors of Thomas Finley filed an inventory in the office of the register of wills of Philadelphia county, on January 24, 1880, in which inventory is included the following:

"'Interest in the firm of Finley & Schlichter, face value $60,089. Appraised value $40,000.' (Record, page 43.)

"On July 27, 1880, an agreement was made between Isaac Schlichter as surviving partner of the late firm of Finley & Schlichter, of the one part, and the executors of Thomas Finley, of the other part, all the children of Finley who were of full age joining therein to express their approval (record, page 6), in which it was recited that Schlichter had purchased Thorne's interest in the firm of Finley & Schlichter, composed of Isaac Schlichter, Thomas Finley, deceased, and Philip Thorne, since the death of Thomas Finley, and agreeing as follows:

"'First. That to wind up and settle the affairs of said late firm and to ascertain the value of the interest of said estate in the same there have been taken as of July 1, 1880, an account of stock and balance sheet of the assets and liabilities of the business, including the profits realized since the death of said Thomas Finley in October, 1879. And the face of the accounts show that there is due said estate the sum of $68,454.86.'

"The sum of $68,454.86 was the face value of Thomas Finley's interest in the business after allowing for profits made since his death, less a deduction of 2½ per cent. on uncollected book accounts (record, pages 87 and 88), the Aramingo Mill being included in the assets at a valuation of $38,773.29

"The agreement further provided that Schlichter agreed to pay in settlement of the interest of the estate of Thomas Finley in said firm the sum of $68,454.86, of which $40,000 was to be paid in cash, and the balance in four equal yearly payments, with interest, at 5 per cent. per annum; and to secure said balance amounting to $28,454.86, was to give a mortgage to the executors of Finley on the mill and machinery of the late firm.

"Pursuant to this arrangement, Schlichter paid to the executors of Finley the sum of $40,000 in cash (see receipt for the same), as of July 27, 1880 (record, page 10), in which the payment was stated as in full for all the right, title, and interest of the estate of Thomas Finley, deceased, of, in, and to the assets of the late firm of Finley & Schlichter, in consideration whereof the executors granted, assigned, and transferred to Isaac Schlichter all the said right, title and interest, and to secure the balance of $28,454.86 Schlichter gave to the executors his bond for that amount, bearing date July 27, 1880 (record, page 11), and secured the same by mortgage of even date recorded in Mortgage Book L. W., No. 92, page 542, etc. (record, page 14). This bond, together with interest, was paid in full (see receipts of the several installments as made [record, pages 13 and 14]), and the mortgage was finally satisfied of record January 4, 1892 (record, page 15).

"In said agreement (record, page 8) Schlichter covenanted to protect the estate of Thomas Finley from all liability upon the mortgage of $15,000 then existing against the Aramingo Mill, and upon the bond accompanying the same; this being the original purchase-money obligation given to Moro Phillips. Pursuant to this covenant, Schlichter paid off this mortgage when it matured, on February 4, 1881. (Record, pages 56 and 57.)

"In said agreement (record, page 9) Schlichter covenanted to assume the liabilities of the late firm of Finley & Schlichter, and to protect the estate of Thomas Finley from any liability on the firm debts of Finley & Schlichter.

"(6) The account of the executors of Thomas Finley was filed in the orphans' court of Philadelphia county on March 27, 1882, and in this account the executors charged themselves with the moneys received from Schlichter, and under the adjudication of the court these funds were appropriated to the payment of the obligations of the estate. (Record, pages 43, 44.)

"Upon the audit of the second account, in April, 1896, it appears that James Alcorn, Esq., appeared for Mary and Thomas Mulqueen, of whom Mary Mulqueen attended in person, and the adjudication of the orphans' court shows that Mr. Alcorn, as attorney for Mary and Thomas Mulqueen, stated to the court that his clients proved the account, and were satisfied to have it confirmed. The balance shown by said account for distribution was $4,169.60, which was awarded to Mrs. Elizabeth Finley as life tenant upon entering by her of proper security for the protection of those in remainder. (Record, page 44.)

"(7) The agreement between Isaac Schlichter and the executors of Thomas Finley, bearing date July 27, 1880, for the sale of all the right, title and interest of Thomas Finley in the firm of Finley & Schlichter to Isaac Schlichter was confirmed by indenture bearing date July 27, 1880, recorded in Deed Book L. W., No. 105, page 388, etc., between Elizabeth Finley, Thomas Finley, and Annie B., his wife, Charles C. Van Dyke and Elizabeth, his wife, William H. Barron, and Catharine, his wife, and William Moffett and Isabella F., his wife.

"And thereafter, upon attaining their majority, Charles W. Finley and William E. Finley executed deeds of conveyance divesting themselves of whatever apparent legal title they may have had in the premises. (Record, page 93.)

"No deed in favor of Isaac Schlichter was ever executed by Mary C. Mulqueen and Thomas F. Mulqueen.

"(8) Under date of December 7, 1883, Isaac Schlichter et al. made conveyance of the Aramingo Mill property to Charles H. Masson, recorded in Deed Book J. O. D., No. 161, page 443, etc., and Charles H. Masson, by deed dated March 4, 1884, and recorded in Deed Book J. O. D., No. 174, page 244, etc., made conveyance of the Aramingo Mill to the Schlichter Jute Cordage Company. (Record, pages 28 and 37.)"

Resting its case upon these facts, the plaintiff filed the bill now before the court, and asks for a decree enjoining the defendants from proceeding by execution upon the judgment recovered by them in the action of ejectment (see Mulqueen v. Schlichter Cordage Co., 108 Fed. 931), and requiring them to convey to the plaintiff the legal title

of the $1/21$ part of the premises in question. It is certain that the defendants are the owners of the legal title to the $1/21$ part of the real estate known as the Aramingo Mill, but it is equally certain that this real estate was the partnership property of Finley & Schlichter, and that the partnership equities are paramount to the legal title. This proposition is not denied by the defendants and, indeed, it could not be successfully denied in the face of the authorities. McCormick's Appeal, 98 Am. Dec. 197, note; Robinson Bank v. Miller, 27 L. R. A. 449, note; Dyer v. Morse, 28 L. R. A. 89, note; Shanks v. Klein, 104 U. S. 18, 26 L. Ed. 635. But it is insisted that the equitable doctrine which regards partnership real estate as personal property, and turns it over to the control of the surviving partner, is wholly founded upon the obligation of the firm to pay its debts, for which purpose all its assets, real and personal, are considered of the same quality, and therefore that, if the real estate is not affirmatively shown to be needed for the payment of firm debts, the deceased partner's interest therein passes as real estate to his heirs or devisees. An examination of the foregoing authorities will show clearly, I think, that this position is not well taken, but that the partnership real estate is regarded in equity as personal property and assets of the firm, not only for the payment of debts, but also for every other purpose properly connected with the settlement of the partnership affairs. In the present case both elements were present. Schlichter took over the Aramingo Mill as part of the partnership property, paying a full price therefor to his deceased partner's executors, as part of the settlement of the firm's affairs; and he also assumed to pay, and did actually pay, a mortgage upon the property, which was a debt of the firm, and all the other outstanding obligations of the partnership. The money paid to Finley's executors was accounted for by them in the orphan's court of Philadelphia county with the express approval of the defendants, and they have profited, or will profit, by the sum which thus became part of their grandfather's estate. It is difficult to conceive of a case more devoid of equity than theirs. There is no substance in it: there is nothing but the naked legal right, which they seek to enforce against the plain undisputed equity and fairness of the transaction.

A decree may be entered in favor of the plaintiff.