11261

SCHENK *ET AL.* v. LEWIS *ET AL.*

(118 S. E., 681)

1. PARTNERSHIP—ORDINARILY SURVIVING PARTNER EXPENDING MONEY FOR PRESERVING PROPERTY ENTITLED TO REIMBURSEMENT INCLUDING INTEREST.—Ordinarily, when a surviving partner, acting promptly in the discharge of his duty to liquidate the partnership affairs, in good faith and for the protection and preservation of the property, expends his own money in improvements and repairs, a court of equity will reimburse him to the full amount of expenditures with interest.

2. PARTNERSHIP—INTEREST ON EXPENDITURES BY SURVIVING PARTNERS FOR IMPROVEMENTS AND REPAIRS FOR THEIR OWN CONVENIENCE IN CONTINUING BUSINESS NOT ALLOWED.—Where one partner died in 1914, no effort was made to wind up the business, surviving partners continued the firm business as if there had been no dissolution, and no demand was made for an accounting, interest on the expenditures by the surviving partners, for improvements and repairs for their own convenience, will not be allowed.

3. PARTNERSHIP—RIGHT OF WINDING-UP PARTNER TO REIMBURSEMENT DEPENDENT ON HIS ACTING LEGALLY AND REASONABLY.—The right of a surviving partner, who incurs liability or expends money in winding up the firm affairs, to be credited therewith on the final accounting, is dependent on his acting legally and reasonably in the performance of his duty as a winding-up partner.

4. PARTNERSHIP—RULE THAT DEATH OF PARTNER TERMINATES PARTNERSHIP NOT WITHOUT EXCEPTION.—Where a deceased partner had no special skill or capacity, and the firm's business was the keeping of his capital invested, the rule that the death of a partner terminates the partnership is not necessarily applicable.

5. PARTNERSHIP—ON DEATH OF PARTNER, SURVIVOR BECOMES TRUSTEE FOR PURPOSE OF LIQUIDATING PARTNERSHIP AFFAIRS.—Upon the dissolution of a partnership by the death of one partner, the surviving partner becomes a trustee of the partnership property for the purpose of liquidating the partnership affairs and as expeditiously as the circumstances will permit to convert the assets into cash, pay off the liabilities, adjust the equities between the partners, and distribute the remainder of the estate between the surviving partners and the representatives of the deceased partner according to their respective interests.

NOTE: On rights and powers of surviving partner with respect to partnership real estate see notes in 27 L. R. A., 350, 449; 28 L. R. A., 86, 129 and 25 A. L. R., 389.

6. Partnership—Surviving Partner Empowered to Convert Assets Into Cash.—To discharge the trust of winding up the partnership affairs, a surviving partner has the power of disposing of the partnership assets by converting them into cash.

7. Partnership—Surviving Partner Continuing Business may be Compelled to Account for Profits.—Where the surviving partner, instead of reasonably performing his duty of converting firm assets into cash and winding up the partnership affairs, continues to conduct the business, he may be compelled to account for the profits thereof.

8. Partnership—On Dissolution, Realty Treated as Personalty to Extent That it is Required to pay Partnership Debts or to Adjust Equities Between Partners.—On dissolution to the extent that partnership realty may be required to pay partnership debts or to adjust equities between the partners in the settlement of the partnership business, a trust is implied, in enforcing which equity treats the realty as personalty.

9. Partnership—Appraisal Held Fairest Method of Ascertaining Value of Realty to Ascertain Value of Deceased Partner's Interest.—In ascertaining the value of an 8 per cent. interest of a deceased partner in an established business, *held,* that an appraisal was the fairest method of establishing the value of the firm's realty.

10. Partnership—Surviving Partners Have Power to Sell Realty for Liquidation.—The surviving partners have the power to sell partnership realty for the purpose of liquidation.

Before Bowman, J., Kershaw, November, 1921. Affirmed as modified.

Action by L. W. Schenk and G. H. Baum as surviving partners of L. Schenk & Co. against Sallie Lewis *et al.* From Circuit Decree sustaining the report of the Special Master the plaintiffs appeal.

*Mr. L. A. Wittkowsky* and *Mendel L. Smith,* for appellants, cite: *Partnership cannot hold legal title to real estate:* 249 Fed., 840; 1 A. L. R., 556; 3 R. C. L. Supp., 1105. *Conveyance to firm passes equitable title:* 2 Rich. L., 541; 14 Pac., 744. *Subject to trusts and equities of the partnership:* 1 A. L. R., 565. *Partnership realty is regarded as personalty for payment of debts and equities:* 104 U. S., 26; 1 A. L. R., 559; 6 A. L. R., 162; 3 R. C. L. Supp., 1106;

38 N. E., 937; 2 L. R. A., 129; 48 Pac., 861; 37 L. R. A., 195; 44 Strob. Eq., 25; Harp. Eq., 25.

*Messrs. Laurens T. Mills* and *W. B. DeLoach,* for respondents, cite: *Partnership realty is personalty only for payment of debts:* 29 L. R. A., 129; Ann. Cas. 1912-D., 1205; 22 A. & E. Enc. L. (2nd Ed.), 93, 106, 108; Burdick Real Prop., 201; 30 Cyc., 625., 666. *When sale proper:* 92 S. C., 515. *Expense in collecting assets not chargeable:* 86 S. C., 523; 30 Cyc., 632.

June 27, 1923.    On petition for rehearing Aug. 17, 1923.

The opinion of the Court was delivered by Mr. Justice Cothran.

Action by Leo Schenk and G. H. Baum, as surviving partners of the firm of L. Schenk & Co., composed of Leo Schenk, G. H. Baum, and C. R. Lewis, against the heirs at law of C. R. Lewis, deceased, and the administrator of his estate, for an accounting and settlement of the partnership affairs. C. R. Lewis died in November, 1914, and the action was commenced in May, 1916.

At some time prior to March 1, 1917 (the exact date not appearing in the record for appeal), the case was referred to I. C. Hough, Esq., as Special Master, to decide all issues of law and fact. Testimony was taken at references beginning March 1, 1917, and on May 5, 1921, more than four years thereafter, the hearings were concluded, and the report of the Special Master was filed. He found that the estate of C. R. Lewis was entitled to a credit of $3,503.18, exclusive of his interest in the real estate; he recommended that certain contracts for the sale of land entered into by L. Schenk & Co. prior to the death of C. R. Lewis and by the surviving members of the firm after the death of C. R. Lewis, be consummated, and that certain other real estate be sold by the Special Master, and the proceeds divided according to the plan indicated in the report. The details of his findings and recommendations will be hereinafter stated.

To this report both plaintiffs and defendants excepted, and the matter was heard by Hon. I. W. Bowman, presiding Judge, at November term, 1921. He filed a formal decree overruling all of the exceptions and confirming the report of the Special Master. From this decree the plaintiffs alone have appealed.

It appears that the firm of L. Schenk & Co. was organized in 1902; the partners being Leo Schenk, G. H. Baum, and C. R. Lewis. There were no written articles of partnership, but there was, however, a verbal agreement between them that each partner was to receive an annual salary: Schenk $900; Baum $400; and Lewis $650. Subsequently the salary agreement was changed to: Schenk $1,500; Lewis $900; and Baum nothing. In addition to their salaries, the partners were to divide the net profits as follows: Schenk 46 per cent.; Baum 46 per cent.; and Lewis 8 per cent.

It does not appear that the respective contributions of the partners to the capital of the partnership are material to the controversy, but, by way of narrative, it may be stated that Lewis contributed $1,000 and only that; that Baum at the outset contributed $7,000, and that he and Schenk contributed further amounts as the business required; Baum's contributions being in excess of Schenk's. The particulars do not appear in the record.

The partnership did a general mercantile business, bought and sold land, and operated a farm upon several adjourning tracts of land known as the Lockhart farm, containing 501 acres, 250 of which were in cultivation.

The Special Master found that at the date of his report, May 5, 1921, the amount due to the estate of C. R. Lewis by the surviving members, Schenk and Baum, was $3,503-.18, and he recommended that that amount, representing his interest, exclusive of the real estate, be paid out of the shares of the surviving partners in the proceeds of the sale of certain real estate which he recommended to be sold.

No point is made by the appellants that this balance was properly payable out of the assets of the partnership and not out of the shares of the survivors; for, as we shall see, the exceptions question only the correctness of certain items composing the Special Master's statement of the account. The Special Master's finding, confirmed by the circuit decree, unexcepted to, must therefore stand, so far as this question is concerned.

The amount which the Special Master reported to be due the estate of C. R. Lewis was arrived at in the following statement:

He credits the estate with the following items:

1. What he terms the capital stock of
   Lewis, $3,019.15, "less $596.42,
   the proportionate part of real
   estate deducted as an asset" (a
   matter which calls for a more
   extended explanation hereinafter
   made) ........................... $2,412.63

2. Account of C. R. Lewis, guardian.      123.86

3  Cotton sold in 1915 from the crop of
   1914 and not credited.........       121.16

4. Proportionate part of account struck
   off and placed back on books by
   surviving partners to their own
   credit (there is no explanation of
   this item; but, as no objection
   appears, it will be passed by) ...      414.72

5. Interest for 5 years and 4 months
   at 7 per cent. (it is impossible to
   tell from the report upon what
   sum this is allowed; but, as no
   objection appears, it will be
   passed by) ..................       784.25

6. Share of Lewis estate in rents of Lockhart farm for 7 years including the year 1921.......... 1,230.00

7. Share of Lewis estate in profits on sale of Orangeburg lot and 75 acres known as Burrows tract..     26.03

    Total credits allowed........                     $5,112.65.
He charged the estate with the following:

1. Accounts of Mrs. Lewis and children after death of Lewis, including his personal account....$1,444.62

2. Proportion of taxes not previously charged off...................    64.85 $1,509.47

    Balance ...........................  $3,603.18

(The figures submitted by the special master as taken above show a balance of $3,603.18, instead of $3,503.18 as reported by him. The total of the accounts of Mrs. Lewis and children, and the personal account of Lewis, is, according to Exhibits S and T, $1,455.51 instead of $1,444-.62, as reported. No exceptions having been entered to these discrepancies, they will be disregarded.)

· The appellants object to the allowance of the credit items 1, 3, and 6. They will therefore be considered, and the objections disposed of:

*Item* 1.—Allowance of credit to the Lewis estate for $2,412.63, as the amount due to Lewis on "capital stock" account, $3,019.15, "less $596.42, the proportionate part of real estate deducted as an asset."

The figures $3,019.15, as the amount representing C. R. Lewis' "capital stock," as it is called, inclusive of his interest in the real estate, were obtained from a statement of the account of C. R. Lewis with the partnership, ren-

dered by the survivors, dated April 16, 1916. That statement is as follows:

### Dr.

| | |
|---|---:|
| To merchandise account 1915...... | $ 505.69 |
| To cash account 1915.............. | 642.06 |
| To merchandise account January 12, 1916 ........................ | 61.60 |
| To cash account April 16, 1916...... | 246.16 |
| To balance to credit.............. | 1,687.22 |
| | $3,142.73 |

### Cr.

| | |
|---|---:|
| By balance due (capital stock) ...... | $3,019.15 |
| By C. R. Lewis, guardian.......... | 123.58 |
| | $3,142.73 |

Tracing the item of $3,019.15 back to the books where the capital account of C. R. Lewis appears:

We find that the account made up as of January 1, 1914, shows:

| | | |
|---|---:|---:|
| A credit balance in his favor of.... | | $4,133.65 |
| And he is charged with— | | |
| Account 1914................$ | 353.33 | |
| Profit and loss year 1914.......... | 761.17 | $1,114.50 |
| Balance to credit.............. | | $3,019.15 |

The account made up as of January 1, 1915, shows:

| | | |
|---|---:|---:|
| A credit balance of.............. | | $3,019.15 |
| And a charge of—Merchandise1915..$ | 505.69 | |
| Cash 1915 .................... | 642.06 | 1,147.75 |
| Balance to credit.............. | | $1,871.40 |

The account made up as of January 1, 1916, shows:

| | | |
|---|---:|---:|
| A credit balance of................ | $1,871.40 | |
| Credit item ....................... | 59.88 | |
| Credit item ....................... | 8.24 | $1,939.52 |
| | | |
| And a charge of ................. | | 20.86 |
| | | |
| Balance to credit.............. | | $1,918.66 |

On July 25, 1915, the survivors handed to the attorney for the Lewis estate a statement of the affairs of the partnership showing Lewis' interest as follows (made up as of January 1, 1915):

### Assets.

| | |
|---|---:|
| Stock of goods .................... | $21,905.42 |
| Cash .....`................... | 1,058.44 |
| Accounts receivable .............. | 36,643.17 |
| Land accounts .................... | 5,184.23 |
| Real estate ...................... | 7,455.24 |
| | |
| | $72,246.50 |

### Liabilities.

| | |
|---|---:|
| Accounts, notes, etc. .............. | $45,473.72 |
| Credit balance .................... | 26,772.88 |
| | |
| | $72,246.60 |

(An error of 10 cents in the credit balance.)

Estimating Lewis' interest in the credit balance of $26,772.88 at 8 per cent:

| | | |
|---|---:|---:|
| He is credited with ............... | | $ 2,459.25 |
| And charged with— | | |
| Merchandise 1914 ..............$353.33 | | |
| Account ....................... | 26.02 | 379.35 |
| | | |
| Credit balance ............... | | $ 2,079.90 |

(How Lewis' proportion of the credit balance of $26,772.88 was arrived at we have no way to determine, as 8 per cent. of that amount is $2,141.83 and not $2,459.25)

Accompanying this statement was a further statement brought down to April 16, 1916. (How this could have been furnished on July 25, 1915, we cannot say, but it so appears in the record for appeal.)

In this accompanying statement:

Lewis is charged with—

| | |
|---|---:|
| Merchandise 1915 .............. | $   505.69 |
| Cash 1915 .................... | 642.06 |
| Merchandise 1916 ............. | 61.60 |
| Cash to April 16, 1916........... | 246.16 |
| | $1,455.51 |

And credited with the credit balance

| | |
|---|---:|
| appearing in the other statement .. | $2,079.90 |
| Credit balance................ | 624.39 |

This is an exceedingly unsatisfactory showing on the part of the survivors. It is impossible to reconcile the three statements; but, disregarding the statement last submitted (accompanied by the financial statement of the partnership) showing a credit balance of only $624.39, and consolidating the statement dated April 16, 1916, with the books showing the capital account of Lewis, the following appears to be a fair statement of the account:

Dr.

| | |
|---|---:|
| To merchandise 1915.............. | $   505.69 |
| To cash 1915.................... | 642.06 |
| To merchandise 1916.............. | 20.86 |
| To merchandise 1916............. | 61.60 |
| To cash 1916..................... | 246.16 |
|     Balance to credit............. | 1,734.48 |
| | $3,210.85 |

Cr.

| | |
|---|---:|
| By balance due on capital account Jan. 1, 1915 ..................... | $3,019.15 |
| By C. R. Lewis, guardian ......... | 123.58 |
| By credit item .................. | 59.88 |
| By credit item .................. | 8.24 |
| | $3,210.85 |

The Special Master, in adopting the figures $3,019.15 as representing the capital stock account of Lewis, has evidently failed, not only to give the survivors credit for the accounts and cash entered upon the books as charges to Lewis, aggregating $1,476.37, but to charge them with admitted items amounting to $191.70. That amount deducted from $1,476.37, leaves $1,284.67, and that deducted from $3,019.15 leaves $1,734.48, the above balance to the credit of Lewis.

As the immediate matter at issue is the interest of Lewis in the partnership assets, exclusive of the real estate, and as his interest in the real estate as originally invoiced at $7,455.24 is included in the balance to his credit under the foregoing statement ($1,734.48), it should be deducted from that amount. His interest was 8 per cent of $7,455.24 —$596.42—and $1,734.48 reduced by this amount leaves the net balance to the credit of the Lewis estate $1,138.06.

No objection having been interposed to allowing Lewis' estate credit for interest upon this balance, calculated from January 1, 1916, to May 5, 1921, the date of the Master's report, at 7 per cent. it amounts to $425.75, making the total credit $1,563.81.

Theoretically, the appellants are correct in their contention that, as the balance of $3,019.15 was arrived at in a statement or inventory, wherein the assets were listed at cost, the valuation of the stock of goods should be amended by reducing it to its actual value, 40 or 50 per cent. But the statements submitted by the survivors are so inconsistent and the last statement showing a credit of only $624.39 so contradictory of previous statements and of the books of the firm, as to shake our confidence in the correctness of that inventory and statement. Disregarding it entirely the survivors have no ground to complain of the conclusion we have arrived at, based upon their own previous statements and the books.

*Item* 3.—The special master allowed Lewis credit for $121.16, his proportion of cotton raised in 1914 and sold in 1915. The appellants contend that they had already ac-

counted for this and that the item amounted to a double credit to Lewis.

The cotton raised on the Lockhart farm in 1914 was sold in 1915 for $1,514.50. The account with Lockhart farm was opened and kept upon the books in the same form as if Lockhart farm had been an individual customer of the firm. At the end of 1914 the account showed Lockhart farm to be indebted in the sum of $2,550.39. If this indebtedness had been carried into the inventory made up after the death of Lewis and before the sale of the cotton, as an asset of the firm, and the credit balance due Lewis had been estimated upon it, it is clear that the survivors accounted for Lewis' share of the $1,514.50 in accounting for his share of the $2,550.39. But there is neither testimony nor other evidence to show that such was the case. If included at all, it was in the item of accounts receivable. It is hardly reasonable to suppose that, in a statement evidently intended to reduce their indebtedness to the lowest figure the survivors would have included as an asset a clear loss of nearly $1,500.

*Item 6.*—The special master credited Lewis with his proportion of the rental value of the Lockhart farm for the seven years 1915 to 1921, both inclusive, amounting to $1,230. The appellants contended that this is excessive.

It appears that of the 501 acres 250 were in cultivation. Outlaw, overseer for the survivors from 1915 to 1921, testified that the rental value on an average (evidently meaning for the whole 501 acres) was $4 per acre; Du Bose, a witness for the plaintiffs, testified that the rental value was $10 an acre (evidently meaning for the cultivated portion). The special master finds that the rental value of the whole property was $2,200 a year, just over $4 an acre for the whole and less than $10 an acre for the part cleared before Lewis' death in 1914. Seven years at $2,200 a year amounts to $15,400, and 8 per cent. of that is $1,230, what the special master fixes it at. The finding is within the testimony, and there is no evidence that it is excessive.

With these items disposed of and with the items not objected to, the account of Lewis will stand thus:

### Dr.

To account of Mrs. Lewis and children after
  death of Lewis, including his personal account . $1,444.62
To proportion of taxes not previously charged off      64.85
To credit balance . . . . . . . . . . . . . . . . . . . . . . . .     1,970.11
                                                                    ――――――
                                                                    $3,479.58

### Cr.

By net balance on so-called capital stock account $1,563.81
By account of C. R. Lewis, guardian . . . . . . . . .      123.86
By cotton of 1914 sold in 1915 . . . . . . . . . . . . .      121.16
By proportion of accounts struck off . . . . . . . . . .      414.72
By proportion of rent . . . . . . . . . . . . . . . . . . . . .   1,230.00
By proportion of profits on Orangeburg lot and
  Burrow tract . . . . . . . . . . . . . . . . . . . . . . . . . . . .       26.03
                                                                    ――――――
                                                                    $3,479.58

*The Seventh Exception.*—This exception alleges error in not allowing the surviving partners interest on the $6,101 expended in improvements placed by them on the Lockhart farm since the death of Lewis.

Under ordinary circumstances, when a surviving partner, acting promptly in the discharge of his duty to liquidate the partnership affairs, in good faith and for the protection and preservation of the property, expends his own money in improvements or repairs, doubtless a Court of equity would reimburse him to the full amount of his expenditures with interest.

"If improvements are made in good faith in winding up the firm's affairs, the survivor is generally allowed reimbursement from the firm's assets; and, if these are insufficient, he is entitled to contribution from the deceased partner's estate." 30 Cyc. 629.

"Where improvements are made upon firm realty by a partner, he is entitled to be treated as a creditor of the firm therefor." 30 Cyc. 694.

The conduct of the survivors in this case, however, falls very far short of a correct apprehension of their duties. Lewis died in 1914; the record shows no effort on the part of the survivors to close up the business; on the contrary they appear to have continued both the mercantile and the agricultural operations as if there had been no dissolution; the improvements and repairs appear to have been made for their own convenience and to have been enjoyed by them in the continued operations of a business which should have been at once closed out. No demand has been made upon them for an accounting of the profits in either line of the business. We think that the special master was right under the circumstances in disallowing their claim of interest.

*The Eighth Exception.*—The appellants contend that the Lewis estate should be charged with 8 per cent. of the expenses connected with winding up the affairs of the partnership, at $50 per month. The only evidence to sustain this charge was the testimony of Schenk, one of the plaintiffs:

"Since Mr. Lewis' death we have not charged up any cost of collecting accounts, which expense would be $50 per month."

We agree with the conclusions of the special master; this evidence is too indefinite to support the claim.

It is true that a surviving partner who incurs a liability or expends money in winding up the affairs of the firm is entitled to be credited therewith on the final accounting, and to be indemnified by his corpartners therefor; but this right is dependent upon his acting reasonably in the performance of his duties as a winding-up partner and in a lawful manner. 30 Cyc. 697. It was the duty of the surviving partners, immediately upon the dissolution of the partnership by the death of Lewis, to wind up the affairs of the partnership. Instead of doing this, they continued the business as if there had been no dissolution.

*The Eleventh Exception.*—The appellants contend that the Lewis estate should have been charged with 8 per cent. of a certain account amounting to $288.16, due to Wagner

& Co., and outstanding at the time the inventory as of January 1, 1915, was made up. The conclusion we have arrived at is not based upon the inventory referred to and hence the unpaid account need not be considered.

*The Fifth and Sixth Exceptions.*—The exceptions assign error in the decree directing that the real estate—the Lockhart farm, and the 40-acre tract (not of the Lockhart farm nor contracted to be sold)—be sold by the special master for partition. The contention of the appellants is that this real estate should be considered as personal property for the purpose of a settlement of the partnership estate, and that, instead of incurring the expense of a sale, the settlement should be made in the mode which had been adopted and accepted by the partners from year to year. By this we understand the appellants to mean that the present interest of the Lewis estate should be ascertained after the same fashion as the capital stock of each partner had been ascertained in the annual statements which were made up; in other words that a statement should be made up showing the assets, stock of goods, cash on hand, bills receivable, land accounts, and real estate appraised at the present value, and liabilities. The difference would represent the amount for distribution upon which the interest of Lewis would be calculated, charging him with advances.

No reason or authority has been advanced by the appellants showing that the Court now should follow a system of informatory settlements in vogue before the death of Lewis, instead of making the settlement according to the settled principles of the law.

The question at issue now is as to the proper course to be pursued in securing to the Lewis estate his interest in the real estate which, at the time of his death, belonged to the partnership; whether it should be by a sale for partition, or by an appraisement of the real estate.

While it is true, as a general rule, that the death of a partner effects an immediate dissolution of the partnership, it is not always so. If there was any special skill or capacity in the deceased partner, the partnership

would, of course, cease to exist from the time of his death. But if the business was for the purpose of keeping the dead partner's capital invested in the partnership, there is no reason why his death would necessarily terminate the relation. 2 Story Eq. Jur. (14th Ed.) § 916. In this particular case the small interest of Lewis in the partnership does not indicate any special skill or capacity; and the course of dealing suggests the purpose of keeping his capital invested, in which event the Lewis estate would be entitled to his share in the profits of the continued business. But, as both parties have proceeded upon the theory that the partnership was dissolved by the death of Lewis, and the administrator of Lewis has made no demand for an accounting of such profits, we will treat the matter as it has been treated.

Upon the dissolution of a partnership by the death of one of the partners, the following principles of law are applicable:

(1) The surviving partner immediately becomes a trustee of the entire partnership property, for the purpose of liquidating the affairs of the partnership, and as expeditiously as the circumstances of the partnership will permit, to convert the assets into cash, pay off the liabilities, adjust the equities between the partners, and distribute the remainder of the estate between the surviving partner and the representative of the deceased partner according to their respective interests.

(2) In order to discharge this trust, the surviving partner is clothed with the power of disposing of the assets of the partnership by converting them into cash.

"In other cases each partner has the right and duty of disposing of the firm assets for the purpose of winding up its affairs and distributing the proceeds among the firm creditors and the partners. If he so applies proceeds with reasonable promptness, he is not chargeable with interest thereon while they are in his hands. Otherwise he may be chargeable with interest." 30 Cyc., 664.

"For this purpose, in case of the death of such partner. the survivor can sell the real estate; and, though he cannot transfer the legal title which passed to the heirs or the devisees of the deceased, the sale vests the equitable ownership, and the purchaser can, in a Court of equity, compel them to convey that title." *Shanks v. Klein,* 104 U. S., 18; 26 L. Ed., 635.

"But, in case of dissolution by death, surviving partners are invested with the exclusive right of possession and management of the whole partnership property and business, for the purpose of paying the partnership debts and disposing of the effects of the concern for the benefit of themselves and the estate of the deceased." *Riddle v. Whitehill,* 135 U. S., 621; 10 Supt. Ct., 924; 34 L. Ed., 282.

"The surviving partner, being charged with the payment of the partnership debts, has the right, in equity, to dispose of its real estate for that purpose; and, though his deed will not convey the legal title to a purchaser, it will convey this equity to him, and through it he may compel the heir to convey the legal title." *Bank v. McGarrah,* 120 Ga., 944; 48 S. E., 393. *Bank v. Cody,* 93 Ga., 127; 19 S. E., 831.

"Upon the decease of any of the members of a firm, the survivors are invested with a power which they did not before possess. The realty of the late firm is so far converted into personalty, in equity, as to be subject, like choses in action or any other personal assets, to be sold by the survivors, if such sale is necessary to pay the partnership debts." *Goldthwaite v. Janney,* 102 Ala., 431; 15 South., 560; 28 L. R. A., 161; 48 Am. St. Rep., 56; note at page 75.

"A surviving partner has the right to sell and convey partnership real estate if necessary to pay the debts of the firm, and such conveyance passes an equitable title." *Walling v. Burgess,* 122 Ind., 299; 22 N. E., 419; 23 N. E., 1076; 7 L. R. A., 481. *Dyer v Morse,* 10 Wash., 492; 39 Pac., 138; 28 L. R. A., 89. *Barton v. Lovejoy,* 56 Minn., 380; 57 N. W., 935; 45 Am. St. Rep., 482.

(3) If the surviving partner, instead of reasonably performing this duty, should continue to conduct the business, he may be compelled to account for the profits thereof.

"If a partner carries on the business after dissolution, he may be compelled to account to his copartner for the profits." 30 Cyc., 665.

"If they [surviving partners] go on with the business under the credit, and risking the effects of the firm, and profits result, they will be bound to account for those profits as belonging to the firm, and they are liable to be so charged with interest on the funds they use, though no profit, or even a loss, is made." *Riddle v. Whitehill,* 135 U. S., 621; 10 Sup. Ct., 924; 34 L. Ed., 283.

(4) The real estate which belonged to the partnership business at the time of dissolution is treated in equity as personal property, subject to disposition by the survivor as personal property, for the purposes of liquidation.

In England partnership realty is generally considered as converted into personal property for all purposes, and this doctrine has been enacted into statute there.

In America, however, the rule is that to the extent that partnership real estate may be required to pay partnership debts or to adjust equities between the partners in the settlement of the partnership business, and only to that extent a trust is implied, in enforcing which equity treats the real estate as personal property and that when these purposes are accomplished, whatever real estate remains resumes its character as such.

"In case of the death of a partner by which a dissolution takes place, the real estate may thus become severed at law from the partnership funds and vest in the surviving partner exclusively, or in the heirs of a deceased partner in common with the survivors, according to the particular circumstances. In taking an account of the partnership effects at law, it is impossible for the Court, for the benefit of credi-

tors, to bring such real estate into the account, or to direct a sale of it, or to hold it a part of the partnership funds. It must be treated in Courts of law as its character is according to the common law. But in a Court of equity in such case the real estate is treated to all intents and purposes as a part of the partnership funds, whatever may be the form of the conveyance. For a Court of equity considers the real estate to all intents and purposes as personal estate and subjects it to all the equitable rights and liens of the partners which would apply to it if it were personal estate. And this doctrine not only prevails as between the partners themselves and their creditors, but (as it would seem) as between the representatives of the partners also. So that real estate held in fee for the partnership and as 'a part of its funds, will upon the death of the partner belong in equity, not to the heirs at law, but to the personal representatives and distributees of the deceased; unless perhaps there be a clear and determinate expression of the deceased partner that it shall go to his heirs at law beneficially." 2 Story Eq. Jur. (14th Ed.) § 917.

"The legal estate or interest in partnership real estate devolves according to the nature and tenure thereof, and according to the general rules of real estate applicable thereto. Equity, however, treats the surviving partner and the heirs of the deceased partner as holding the title after such devolution in trust, so far as necessary, for the persons beneficially interested in the land as a part of the partnership stock." 30 Cyc., 625.

"The real property belonging to the partnership is treated in equity as part of the partnership fund, and is disposed of and distributed the same as personal assets." *Clagett v. Kilbourne,* 1 Black, 346; 17 L. Ed., 213.

"Real estate purchased with partnership funds for partnership uses, though the title be taken in the name of one partner, is in equity treated as personal property, so far as is necessary to pay the debts of the partnership and adjust the equities of the partners." *Shanks v. Klein,* 104 U. S., 18; 26 L. Ed., 635.

"Real property owned by a partnership and purchased with partnership funds is, for the purpose of settling the debts of the partnership and distributing its effects, treated in equity as personal property." *Allen v. Withrow,* 110 U. S., 119; 3 Sup. Ct., 517; 28 L. Ed., 90.

"Real estate purchased with partnership funds for partnership uses, though the title be taken in the name of one partner, is in equity treated as personal property, so far as is necessary to pay the debts of the partnership and to adjust the equities of the partners; but the principle of equitable conversion has no further application." *Riddle v. Whitehill,* 135 U. S., 621; 10 Sup. Ct., 924; 34 L. Ed., 283.

"The principle of the various cases is that real estate bought for and applied to partnership uses, with partnership funds, is, after the death of one of the partners, to be treated in equity as personal property, for all the proper and necessary purposes, needs, and requirements of the partnership." *Sprague v. Hoyt* (C. C.) 29 Fed., 421.

The "partnership real estate is regarded in equity as personal property and assets of the firm, not only for the payment of debts, but also for every other purpose properly connected with the settlement of the partnership affairs." *Schlichter v. Mulqueen* (C. C.), 142 Fed., 583.

See, also, to the same effect: *Sternberg v. Larkin,* 58 Kan., 201; 48 Pac., 861; 37 L. R. A., 195. *In re Robinson,* Kan., Pa., 239; 43 Atl., 207. *Beck v. Thompson,* 22 Nev., 109; 36 Pac., 562. *Bank v. McGarrah,* 120 Ga., 944; 48 S. E., 393. *Sprague v. Hoyt* (C. C.) 29 Fed., 421. *Molineaux v. Raynolds,* 54 N. J. Eq., 559; 35 Atl. 536. *Lovewell v. Schoolfield,* 217 Fed., 689; 133 C. C. A., 449. *State v. Neal,* 29 Wash., 391; 69 Pac., 1103. *Troll v. St. Louis* (Mo. Sup.) 168 S. W., 167. *Adams v. Church,* 42 Or., 270; 70 Pac., 1037; 59 L. R. A., 782; 95 Am. St Rep., 740. *Andrews v. Brown,* 21 Ala., 437; 56 Am. Dec., 252 *Galbraith v. Tracy,* 153 Ill., 54; 38 N. E., 937; 28 L. R. A., 129; 46 Am. St. Rep., 867; *Darrow v. Calkins,* 154 N. Y., 503; 47 N. E., 61; 48 L. R. A., 299; 61 Am. St. Rep., 637. *Sieg v. Greene,* 225 Fed., 955; 141 C. C. A., 79; Ann. Cas

1917C., 1006. *Kentucky Co. v. Sewell,* 249 Fed., 840; 162 C. C. A., 74; 1 A. L. R., 556. *Rovelsky v. Brown,* 92 Ala., 522; 9 South., 182; 25 Am. St. Rep., 83. *Cain v. Hubble,* 184 Ky., 38; 211 S. W., 413; 6 A. L. R., 146; Ann. Cas. 1918E, 1189 note. *Sharp v. Sharp,* 54 Utah., 262; 180 Pac., 580; 20 R. C. L., 866. *Woodward v. Nudd,* 58 Minn., 236; 59 N. W., 1010; 27 L. R. A., 340; 49 Am. St. Rep., 503. *Bark v. Cody,* 93 Ga., 127; 19 S. E., 831. *Shields v. Fuller,* 4 Wis., 102; 65 Am. Dec., 293. *Tillinghast v. Champlin,* 4 R. I., 173; 67 Am. Dec., 510. *Lang v. Waring,* 25 Ala., 625; 60 Am. Dec., 533. *Duncan v. Westerland.* 110 S. C., 94; 96 S. E., 531; *Bowman v. Bailey,* 20 S. C., 550.

"A deceased partner's share of the surplus of the real estate of the copartnership which remains after paying the debts of the firm and adjusting all the equitable claims of the different members of the firm, as between the heirs at law and the personal representatives of the deceased partner, is to be considered and treated as real estate." 30 Cyc., 628.

"Whatever remains of firm realty after the debts of the firm are paid and the equities between the partners adjusted, descends in this country according to the rules of real estate, and vests in his heirs of devises." 30 Cyc., 627.

A Court of equity, therefore, is in possession of the *res,* the real estate which the partnership owned at the time of dissolution, considered as personal property, and is confronted with this situation: As of May 5, 1921, the surviving members of the partnership are indebted to the Lewis estate in the sum of $1,970.11; the partnership is indebted to the surviving members in the sum of $6,101, for improvements upon the property; there are no assets with which to adjust these claims except the real estate; there are no outstanding debts against the partnership. The question is, What is the just and equitable method of providing for the payment of the above claims and of separating and distributing the interests of the several partners in what may remain?

The assets being equitable, in the control of the Court, and impressed with a trust, neither the survivors of the partnership nor the heirs at law of the deceased partner have the right, as tenants in common of the real estate, to demand a partition in kind or a sale for partition; the equity of applying the assets to the above purposes is superior to the right of partition. It is within the discretion of the Court to adopt such a procedure as will attain the fairest and most equitable adjustment of the respective interests.

It is plain that the basis of any adjustment between the parties is the value of the outstanding real estate. Can that be better ascertained by a sale than by an appraisement?

If the parties were upon a comparatively even plane of financial ability, or were in a measure equally interested, doubtless a sale would be as fair a method of arriving at a proper basis of valuation as any other. Here, however, are on one side men in an established business, and with a purchasing power to begin with of $6,101 and 92 per cent of the net proceeds; on the other, a widow and small children all of whose interests amount to only $1,970.11 and 8 per cent. of the proceeds. What their financial ability is we do not know, but upon its face there is presented a very unequal contest in bidding, and the sale a most inadequate means of establishing the value of the property.

We conclude that the fairest method of establishing the value of the property, the basis of adjustment, is by an appraisement rather than by a sale; particularly in view of the insistence of the plaintiffs upon this method, apparently against their interest.

A further consideration sustaining this conclusion is this: Under the authorities cited above, the surviving partners had the power to sell the real estate (that is, the partnership equities, subject to their accountability as trustees) for the purpose of liquidation; while they had this power, it would hardly have been expedient for them to have exercised it, in apprehension of possible dissatisfaction with their action resulting in a law suit. The safer course would have been to apply to the Court for leave

to do so at a price deemed by them reasonable; upon such application, with evidence of the fairness of the proposition, the Court would have either sanctioned the sale or allowed the survivors to take the property at the fixed valuation.

The Circuit Court should appoint five disinterested freehold appraisers—two at the suggestion of the survivors, and two at the suggestion of the representatives of Lewis; these four to name the fifth, or in default thereof, he to be named by the Circuit Judge. They should be directed, after qualifying, to go upon the real estate, appraise it at its fair market value as of the date of the filing of the remittitur in this case, taking into consideration all improvements that have been placed thereon, and make their report in writing to the Court of common pleas; a majority thereof controlling.

Upon the confirmation of that report the interest of the Lewis estate should be ascertained thus: From the appraised valuation of the property, deduct the amount allowed the plaintiffs for improvements $6,101; upon that remainder calculate the interest of Schenk at 46 per cent., of Baum at 46 per cent., and of the Lewis estate at 8 per cent.; from the interests of Schenk and Baum deduct the amount of the credit balance due to the Lewis estate of $1,970.11, with interest from May 5, 1921, at 7 per cent., to the date of the circuit decree hereafter to be entered. The Lewis estate is entitled to the 8 per cent. as ascertained and the $1,970.11 with interest as stated. The entire costs of the case should be borne by the plaintiffs.

The amount thus ascertained to be due the Lewis estate shall constitute a lien upon said real estate, and if not paid by the plaintiffs within 30 days from the date of the circuit decree to be entered, with interest from the date thereof, the real estate shall be advertised and sold as in cases of foreclosure, for satisfaction of the same. Let the circuit decree so provide.

Upon its payment, the special master will convey to the plaintiffs all of the right, title, and interest of the estate of Lewis in said real estate, free from any claim of dower by

the widow. *Bowman v. Bailey,* 20 S. C., 550, and the same shall be done for the purchaser in the event of a sale.

The amount ascertained to be due the Lewis estate shall be deemed real estate and paid to the heirs at law of Lewis according to their respective interests as such.

In reference to the lands owned by the partnership, exclusive of the real estate hereinbefore referred to, which are covered by certain executory contracts entered into by the partnership before the death of Lewis, referred to in the appellants' exception No. 9, the attorneys for the Lewis estate state in their argument:

"The respondents are willing that deed shall be made to Schenk and Baum or their assign, or to whomsoever has the title as the case may be, covering all of the interests of the estate of Lewis in those lands for which contracts for sale have been made."

The circuit decree hereafter to be entered will accordingly so provide.

In reference to the contracts entered into by the survivors after the death of Lewis, the recommendations of the special master, confirmed by the circuit decree, to which no exception appears to have been entered, will be carried out.

The judgment of this Court is that the judgment of the Circuit Court be affirmed except as modified herein, and that the case be remanded to that Court for such further proceedings as may be necessary to carry into effect the conclusions announced and directions ordered.

Mr. Chief Justice Gary and Mr. Justice Watts concur.

Messrs. Justices Fraser and Marion concur in the result.

Mr. Justice Fraser, I concur in the result. It seems to me that it is a dangerous proposition; a surviving partner has the absolute right to sell the real estate of the partnership and give good title to it. There are no limitations of the power set forth in the majority opinion. That makes the right unrestricted and absolute. The danger of such rule

is apparent in this case. The owner of only 8 per cent. interest died. It might easily have been the other way. So we are putting it in the hands of a man who owns only an eight per cent. interest in a partnership to sell all of the real estate under what may be a false pretense of raising money to pay debts. It is suggested that the surviving partner may apply to the Court to sanction the sale and thereby get protection. It may be that protection is needed for the estate of the deceased partner. If the surviving partner is not financially responsible, he does not need the protection of judicial proceedings and will not be likely to seek it. When the estate of the deceased partner needs protection, it is not likely to get it. If it does not need it, it will probably get it. In this case it is found that it is the interest of the 8 per cent. deceased partner that needs protection from the 92 per cent. interest, and provision is made for the protection of the 8 per cent. interest. If, however, the surviving partners have the absolute right of sale, then by what right may the Court abridge that right?

*Bowman v. Bailey,* 20 S. C., 553·

"It may be laid down as a general proposition, that, if real estate is purchased by two or more parties, and paid for out of partnership funds, and held for partnership purposes, it will be regarded in law as held by the several partners as tenants in common, yet, in equity, it is so far regarded in the light of personalty as to be subject, under an implied trust, to be sold and applied, if necessary, for the payment of the partnership debts. Nor can the widow of one of such partners claim dower out of any part of such estate, except such as may not be required for the payment of the partnership debts. Of that she may claim her dower both at law and in equity.

When a partner dies, his interest in the real estate of the copartnership descends to his heirs at law, subject to the right of dower in the surplus. The surviving partner or partners are not made a tribunal for divesting the heir of his inheritance or the widow of her dower. When it is said that equity may treat the realty as personalty, it means

the Court of equity, and then only when those who are entitled to the legal estate are before the Court.

If the law be as stated in the majority opinion, then copartnerships are very dangerous. It is said that a man can protect himself by being careful in the selection of his partners or forming no partnership at all. The most careful are sometimes deceived. It often happens that men are copartners who do not know it, or even when they have tried to prevent it. It is the nature of the contract and not the purpose of the parties that determines the question as to whether the parties to a contract are partners or not.

### ON PETITION FOR REHEARING

*PER CURIUM.* Both parties have filed petitions for a rehearing upon grounds which well be disposed of.

The respondents ask for a rehearing of the appeal upon two grounds:

(1) That in the statement of the account of the estate of C. R. Lewis, showing a credit balance of $1,970.11, the debit item "Accounts of Mrs. Lewis and children after death of Lewis, including his personal account, $1,444.62," had already been charged against the estate in the statement showing a credit balance of $1,734.48. The respondents are right in their contention, and the opinion must be corrected accordingly. Instead of a credit balance of $1,970.11, it should be $3,414.73.

(2) That no provision is made in the opinion for the amount of rent due upon the interest in Lockhart farm to the estate of C. R. Lewis for the years 1922 and 1923. The respondents are right in this contention also, and the opinion must be corrected accordingly. The rental value is shown to be $2,200 per annum. For the two years this would amount to $4,400 and 8 per cent. thereof would be $352, for which the estate is entitled to credit in addition to the credid balance of $3,414.73 above stated. The $3,414.73 should bear interest from May 5, 1921, at 7 per cent. to the date of the circuit decree hereafter to be entered; $176 of the $352 rent, should bear interest from November 1, 1922, to

the same date; and the remaining $176 from November 1, 1923.

The appellants ask for a rehearing upon the following grounds:

(1) That, in view of the financial and commercial effects of the World War, raging at the time of the death of Lewis, the surviving partners were justified in not forcing a liquidation of the partnership business at that time, and under the circumstances acted for the best interest of all concerned. This may be true, but at the same time it is true that they were largely interested in the affairs of the business themselves and acted no doubt with the intention of protecting that interest as well as that of the Lewis estate. Assuming that their course was justifiable, they took it with the legal consequence of being held responsible, not only for losses, but for profits made, in addition to the then value of the assets. There has been no effort to charge them with the profits of the going concern or of the farming operations. We are satisfied that the opinion meets the justice of the case.

(2) That Exhibit T criticised in the opinion, was made up on a different basis from the statement of December 31, 1914, in that in the December statement the inventory of the stock of goods was based upon 100 per cent. of the cost of the goods and Exhibit T was not. An examination of the record shows that Exhibit T was accompanied by the December statement, and the credit balance of $2,079.90, based upon the inventory then taking at 100 per cent. appearing in the December statement, was the initial entry in Exhibit T.

(3) Other matters which were carefully considered in the original opinion.

It is accordingly ordered that the opinion heretofore filed be corrected in the particulars hereinbefore stated, that the petitions for a rehearing be dismissed, and that the orders staying the remittitur be revoked.